655 So.2d 18 (1995)
Kenneth E. MASLOWSKI
v.
Sandra Kay Dunkin MASLOWSKI.
No. 93-CA-00484-SCT.
Supreme Court of Mississippi.
March 30, 1995.
Rehearing Denied May 18, 1995.
*19 Woodrow W. Pringle, III, Gulfport, for appellant.
Frank P. Wittmann, III, Gulfport, for appellee.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
On March 29, 1993, the Harrison County Chancery Court, Second Judicial District, granted Sandra Kay Dunkin Maslowski (Sandra) and Kenneth E. Maslowski (Kenneth) a divorce, on the grounds of Irreconcilable Differences. However, the chancellor did not grant Kenneth an equitable lien on Sandra's interest in the couple's marital home. Aggrieved by the decision below, Kenneth appealed to this Court, assigning as error the following:
DID THE COURT ERR IN NOT GRANTING THE APPELLANT AN EQUITABLE LIEN ON THE APPELLEE'S INTEREST IN THE PARTIES' JOINTLY OWNED HOME LOCATED AT 11504 SHORECREST ROAD, BILOXI, MISSISSIPPI?

II. STATEMENT OF THE FACTS.
Sandra married Kenneth on February 20, 1987, in Gulfport, Mississippi. Their six year marriage produced no children. Kenneth and Sandra separated on June 24, 1992.
Sandra filed a complaint for divorce on August 4, 1992. In this complaint, Sandra alleged habitual, cruel, and inhuman treatment. Alternatively, Sandra asked for irreconcilable differences as the grounds for the divorce.
On March 18, 1993, Kenneth and Sandra entered into an agreement under Miss. Code Ann. § 93-5-2 on March 18, 1993 to a divorce on the grounds of irreconcilable differences and to permit the court to decide issues upon which they could not agree. The consent agreement provided that neither party would be responsible for alimony, and that neither party would claim any interest in the other's retirement accounts. Sandra also agreed to return the 1990 Firebird vehicle to Kenneth. They consented to the trial of the following contested issues:
1. The disposition of the parties' land and home at 11504 Shorecrest Road, Biloxi, Mississippi.
2. The disposition of the personal properties of the parties including the personal property located in the home at 11504 Shorecrest Road, Biloxi, Mississippi.
Sandra requested that the court grant her exclusive use, possession, and ownership of the family's home located at 11504 Shorecrest Road in Biloxi, Mississippi, including all of the household fixtures, appliances, and furniture. In Kenneth's counterclaim, he asked that the couple's home be partitioned *20 and sold. He requested the proceeds from this sale first be applied to the mortgage and any costs of the sale, with an equal division between the parties of any remaining proceeds.
Kenneth filed a motion to amend his counterclaim on February 22, 1993. Kenneth asserted that Lindsey v. Lindsey, 612 So.2d 376 (Miss. 1992), a new decision, was support for Kenneth receiving an equitable lien in the marital home. Kenneth's motion requested that the proceeds of the sale of the property satisfy Kenneth's equitable lien first, then the remaining proceeds be divided between the parties. The chancellor granted Kenneth's motion to amend.
The final judgment, awarding divorce, also divided the couple's personal property. The chancellor decreed that the parties would sell the marital home. The proceeds would first pay any indebtedness on the home. The remaining proceeds would go equally to each party. Aggrieved as to the denial of an equitable lien on Sandra's interest in the home, Kenneth filed his notice of appeal.

III. ANALYSIS.

DID THE COURT ERR IN NOT GRANTING THE APPELLANT AN EQUITABLE LIEN ON THE APPELLEE'S INTEREST IN THE PARTIES' JOINTLY OWNED HOME LOCATED AT 11504 SHORECREST ROAD, BILOXI, MISSISSIPPI?
Kenneth argues on appeal that the chancellor should have granted him an equitable lien on Sandra's interest in the marital home under Lindsey v. Lindsey, 612 So.2d 376, 378 (Miss. 1992), in the sum of $21,492.00. He contends that Sandra made little or no financial contributions to the purchase of the land and the building of the house. He asserts that she would be "unjustly enriched" by receiving a one-half interest in the land.
Sandra argues that the chancellor correctly noticed her contributions to the marital home by refusing to award Kenneth an equitable lien. She asserts that based on the facts of this case, it would be virtually impossible to determine which party contributed more to the marital assets. Sandra states that the chancellor was only required to divide the marital property equitably, not equally, and that the chancellor was not manifestly wrong in his partition of the property.
In determining the appropriate standard of review, this Court has refused to reverse a chancellor absent a decision being manifestly wrong or not supported by "substantial, credible evidence." Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss. 1992). Also, this Court presumes with no specific findings on the record, the chancellor resolved all such fact issues in favor of appellee. See, e.g., Matter of Estate of Mason, 616 So.2d 322, 329 (Miss. 1993).
Given that this case explores several facets of marital and non-marital property merged together in the marriage, it is appropriate to clarify the meaning of these terms. States employing equitable distribution theory classify property in two terms. Property not subject to equitable distribution because it was not acquired within the marriage is non-marital property. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 3.03(2)(a-b) at 3-12, 3-13 (1994 ed.). Property subject to equitable distribution is marital property. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 3.03(2)(a-b) at 3-13 (1994 ed.). As this Court has stated:
Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.
Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss. 1994).
Frequently a presumption of marital property arises to any property acquired during the marriage. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 3.03(4) at 3-37. (1994 ed.).
Commingled property is a combination of marital and non-marital property which loses its status as non-marital property as a result. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of *21 Marital Property, § 3.03(5) at 3-37. (1994 ed.). See also Boggs v. Boggs, 26 Ark. App. 188, 761 S.W.2d 956, 957 (1988) (en banc) (holding money received from inheritance, as non-marital property, presumptively became marital property when placed in joint account under Arkansas law).
Kenneth cites the cases of Johnson v. Johnson, 550 So.2d 416 (Miss. 1989), and Jones v. Jones, 532 So.2d 574 (Miss. 1988), asserting that the chancery court can order an equitable distribution of jointly accumulated property, and in doing so may look behind the formal state of the title. See also Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss. 1994). In Hemsley, this Court emphatically held that title is no longer determinative in deciding a spouse's rights to the property. Id., at 914. Kenneth also correctly states that the chancery court is empowered to impress an equitable lien. This Court has held that the authority to grant an equitable lien is governed by Miss. Code Ann. § 93-5-23. Lindsey v. Lindsey, 612 So.2d 376, 380 (Miss. 1992).
This Court has defined an equitable lien as a non-possessory device placed upon estates through contract, as a means for a creditor to recover a debt. Lindsey, 612 So.2d at 380 This Court has also noted that chancellors can equitably impress a lien upon property as security for a judgment, to avoid unjust enrichment. Neyland v. Neyland, 482 So.2d 228, 230 (Miss. 1986).
In the final order granting Sandra and Kenneth a divorce on the grounds of irreconcilable differences, the chancellor divided both the couple's real and personal property. Sandra was previously married before her marriage to Kenneth. By virtue of her previous marriage, Sandra brought a great deal of personal property into the marriage, which Kenneth admitted. However, Kenneth and Sandra did acquire a number of items of marital assets during their marriage, including two cars, a truck, land, a trailer, furniture, and the house. During trial, the court divided these marital assets, and the division is not at issue in the appeal.
The chancellor also made a disposition of the couple's home in the final judgment. The chancellor ordered a sale of the home and an equal division of the remaining proceeds between these parties, after the satisfaction of all encumbrances on the property. The chancellor did not award Kenneth an equitable lien on the home as he requested.
Kenneth claims that he is entitled to a lien on several items. The first item is the land upon which the couple's home is built. Sandra and Kenneth obtained this marital asset by a warranty deed dated October 22, 1987, and they hold title as joint tenants with rights of survivorship and not as tenants in common.
Kenneth's mother owned the real property upon which the house was built and gave this property to them. The parties stipulated that the county appraised the land itself at $5,600.00 for tax purposes. Kenneth asserts he is entitled to an equitable lien for this contribution to the home, as a non-marital asset commingled into mixed assets.
Prior to his marriage to Sandra, Kenneth owned a boat. Kenneth sold this non-marital asset after he got married. Kenneth spent the proceeds from the sale of his boat to build a shed and a driveway which are still on the property. Kenneth claims that he is entitled to an equitable lien for this $3,000.00.
Kenneth also owned a real property lot located at Creel Circle in Handsboro at the time of his marriage to Sandra. Kenneth bought this property from his father. After his marriage to Sandra, Kenneth sold this non-marital asset for $2,300.00, and used this money in the house, a marital asset. Kenneth also claims an equitable lien for the $2,300.00 that he received from the sale of this non-marital asset.
Also at the time of his marriage to Sandra, Kenneth had a bank account at both Gulf National Bank and Hancock Bank. Kenneth testified that the amount in these accounts was between $11,000.00 and $12,000.00. Kenneth asserted that he spent a substantial amount of this money (approximately $7,000.00 to $8,000.00), which was a non-marital asset, on their house. Sandra admitted that some of this money went into developing the land and also into the installation of the well and the septic tank. Kenneth *22 requests that he be given an equitable lien on the amount of money from his non-marital bank accounts that went into the building of the home.
To help pay for this home, Sandra and Kenneth borrowed the sum of $20,000.00 from the People's Bank. The People's Bank has a lien against the property. The approximate outstanding balance on this mortgage at the time of the trial was $21,000.00 or $22,000.00. The house notes are $288.00 per month. Sandra and Kenneth both testified that Kenneth had been paying the house notes each month since their separation on June 24, 1992. Kenneth is also asking that he be granted an equitable lien in the amount of his payments of the house notes since the parties' separation.
Briefly summarized, Kenneth requests an equitable lien for the following amounts:

 1. Value of the land conveyed to the parties'
 by Kenneth's mother. $ 5,600.00
 2. Proceeds from the sale of Kenneth's boat
 going to the home 3,000.00
 3. Proceeds from the sale of Kenneth's real
 property. 2,300.00
 4. Funds on deposit in Kenneth's name used for
 the house. 7,000.00  8,000.00
 5. House payments of $288 per month made to the
 People's Bank from the date of the parties'
 separation (June 24, 1992) through March,
 1993. 2,592.00
 __________
 TOTAL $20,492.00  21,492.00

It is clear from the above discussion that Kenneth made substantial contributions from his non-marital assets to the home. It is also very apparent from the record that Sandra made substantial contributions. It is clear from the record that Sandra's father was the major force and participant in the building of this home.
When Sandra and Kenneth first acquired the property from Kenneth's mother, the property was not in very good condition. Sandra's father and one of his friends worked to clear the property in order to build the house upon it. Sandra also testified that what her father did not build, he had contracted out at significant discounts from normal builder's fees.
Sandra said that her father never charged them for his services in building the house. Her father asked for incidental expenses, such as gas, which they paid. He also asked for some amount of money, but the parties could not reach an agreement on how much to pay. However, Sandra and Kenneth did buy her father a chandelier for his living room which cost $186.00.
Sandra's father, Curtis Scarborough, also testified at trial. He had been a building contractor for about 20 years. He cleared the property for building Sandra and Kenneth's house. He either built the house himself or hired others to have it built. He served as the contractor for this house. Scarborough testified that he did the carpentry work, but had someone else do the plumbing and electrical work. Finally, he said that he did not charge Sandra and Kenneth for his work on their house.
Sandra testified that her role in building the house included being there everyday to make sure the workers were fed. She said that she helped clean the debris from the boards and the bricks, cleaned up the trash, and helped clean the woods out of the yard. She described Kenneth's work efforts on the house as about the same as hers.
Kenneth said that just about all of their free time was spent working on the house. Kenneth described his position in the building of this house as being "more or less a gopher." Kenneth said, "I just  you know, I helped him. I did what he told me to."
Sandra admitted that she did not invest any non-marital assets in real property proceeds into the home, as did Kenneth. She also said that she did not have any bank accounts or cash (other than her salary) that she contributed to the building of the house. *23 Sandra was employed when she married and remained employed throughout the her marriage to Kenneth. She worked as a medical secretary for Gulfport OB/GYN Clinic for seven years and had recently changed jobs to the North Bay Family Medical Center about five months prior to trial. Sandra testified that she contributed her salary and the child support payments that she received, and considered her father's work as her further contribution as Kenneth's mother's gift of the land.
An appraisal of Sandra and Kenneth's home was admitted into evidence. This appraisal, conducted by a real estate agency, appraised the home's value to be between $76,376.00 and $78,376.00.
Equitable liens have been utilized in a number of situations involving domestic matters. In Dunn v. Dunn, 609 So.2d 1277, 1283-84 (Miss. 1992), the chancellor ordered an equitable lien against the husband's interest in the homestead to secure the payment owed to the wife by the husband's business. This Court has also said that the payment of alimony may be secured by an equitable lien. See, e.g., Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988).
In Neyland v. Neyland, 482 So.2d 228 (Miss. 1986), this Court affirmed a chancellor's decision awarding a spouse's parents an equitable lien for money they had advanced the couple in purchasing a home, when it became clear the couple were divorcing. Neyland, 482 So.2d at 230-31. The case of Dudley v. Light, 586 So.2d 155 (Miss. 1991), has extremely similar characteristics.
These two cases, Neyland and Dudley, are distinguishable in that in these two cases it was the couples' parent or parents who were seeking the equitable lien and not one of the divorcing spouses. Also, in these two cases it appears clear that the parent or parents expected to be repaid, wherein the instant case this does not appear to be the case.
In his request for an equitable lien, in both the lower court and on appeal, Kenneth seems to most heavily rely on the case of Lindsey v. Lindsey, 612 So.2d 376 (Miss. 1992). In fact, in his original counterclaim which was filed on August 26, 1992, Kenneth asked for exactly what the chancellor did in this case. Kenneth asked that the house be sold, the proceeds first applied to the mortgage, and the remaining proceeds to be divided equally.
In Lindsey, though the chancellor found that the divorcing parties' home was jointly owned, he granted the wife an equitable lien in her husband's interest in the home. The amount of the lien was $22,305.65. Lindsey, 612 So.2d at 377. The husband appealed contending that the chancellor erred in awarding his wife an equitable lien in his interest of the marital home. Id. at 378. The Court affirmed the chancellor's award, based on the spouse's financial and physical contributions to the acquisition and upkeep on the home. Id. at 379.
However, Lindsey is distinguishable to this case. The facts in Lindsey indicate that the wife's contribution was a "one-sided" affair. In Lindsey, the wife made most of the financial as well as physical contributions toward the acquisition and upkeep of the home. Kenneth made a significant financial contribution toward the building of the home here. However, there were likewise substantial contributions made by or for Sandra.
As demonstrated above, both parties have commingled non-marital assets and personal work of the parties, and in this case, Sandra's father, into the home, a mixed asset. One type of contribution, such as financial, has equivalent value to another, such as domestic. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994). Legal observers have noted that contributions from each spouse's non-marital assets is a consideration in awarding share in the marital home. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 12.07(2) at 12-58 (1994 ed.), citing Thomas v. Thomas, 362 So.2d 260, 261 (Ala. Civ. App. 1978). A trial court may award such a share in the marital home through ordering a sale of the marital home, and distributing the proceeds "in accordance with a formula prescribed by the court. 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 12.07(2) at 12-54 (1994 ed.), citing Smith v. Smith, 568 So.2d 838, 839-40 (Ala. Civ. App. 1990).

*24 IV. CONCLUSION.
However, because no valuation has been put on the work of Sandra's father with regard to the marital home, this Court reverses and remands for a new trial on the issue of the lien regarding that property. This Court said in Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss. 1994), that one of the steps to arriving at equitable distribution is assigning a value to the property involved. In the instant case it is the value of a "contribution" that we consider, but in this context, the principle is the same. Obviously, the value of Sandra's father's work has been offset against the monetary and land contribution made by Kenneth. That offset cannot be reviewed by this Court, or even accurately made in the first instance, without some testimony of the value of that work. Because there is no testimony regarding the value of the work, this Court is unable to affirm an implicit finding that the value is sufficient to offset the contributions of non-marital property made by Kenneth. Therefore, this Court remands for a new trial on this issue.
REVERSED AND REMANDED.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
The chancellor improperly allowed the unproven value of Sandra Maslowski's father's labor to offset Kenneth Maslowski's well-documented financial contributions to the construction of the marital dwelling. However, the majority compounds this error and gives Sandra a second bite of the apple by remanding the case so that she may put on proof of the value of her father's work. Accordingly, I dissent.
At the hearing, Kenneth met his burden of proof by presenting evidence of the dollar value of his contributions from non-marital assets to the construction and financing of the marital dwelling: land conveyed to the couple by his mother; proceeds from the sale of his boat; proceeds from the sale of other real property he owned; funds on deposit in his name which had been used on the house; and monthly house payments from the time of the separation until March, 1993. Together, his contributions totaled more than $20,000.00. Sandra seeks to use her father's labor to offset Kenneth's financial contributions. Both she and her father testified as to his role in the project and the incidental reimbursements made to him, but neither put a price on his efforts. Further, both testified that he did not charge for his services but accepted a chandelier Sandra and Kenneth purchased for him to show their appreciation.
Division of the marital home was very much at issue in the proceedings below. Sandra and her father, like Kenneth, had the opportunity to put on proof of the dollar value of the father's contributions. They did not do so. In the context of other civil cases, where the plaintiff fails to meet his burden of proof on the issue of liability or damages, we have not allowed the second bite of apple the majority now permits. See e.g. McGill v. Bradley, No. 90-CA-01206-SCT, ___ So.2d ___ [1994 WL 287816] (not yet reported); Peaster v. David New Drilling Co., Inc., 642 So.2d 344 (Miss. 1994) (affirming judgment in favor of employer without allowing plaintiff to develop and present more evidence that injury was result of intentional tort and outside scope of workers' compensation). "The law provides instead that for every award for damages, the plaintiff must prove some loss or damages." Alldread v. Bailey, 626 So.2d 99, 103 (Miss. 1993). Likewise, one is not automatically entitled to an equitable lien against his marital dwelling. The majority recognizes that some proof of the value of one's contribution is required. However, it fails to recognize that, just as in other contexts, cases are not remanded merely to provide a party who failed to meet his burden of proof another chance to present more evidence, which should have been done the first time around. Accordingly, I dissent.