# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-CA-01275 COA

**WENDELL WAYNE TRAMEL**                                                **APPELLANT**

**v.**

**LISA RENEE COLEMAN TRAMEL**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/96 |
| TRIAL JUDGE: | HON. MELVIN MCCLURE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT H. BROOME |
| ATTORNEY FOR APPELLEE: | JOHN T. LAMAR, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED DIVORCE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT |
| DISPOSITION: | REVERSED AND REMANDED - 8/18/98 |
| MOTION FOR REHEARING FILED: | 9/2/98 |
| CERTIORARI FILED: | 12/4/98 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., HERRING, AND SOUTHWICK, JJ.

BRIDGES, C.J., FOR THE COURT:

¶1. Lisa Tramel was granted a divorce from Wendell Tramel on the grounds of habitual cruel and inhuman treatment. As part of the equitable division of property, the chancellor granted Lisa forty percent of the proceeds from a personal injury settlement Wendell received after the amputation and subsequent reattachment of his arm. On appeal, Wendell argues that the settlement money was not marital property and should not have been subject to equitable division. Additionally, Wendell attacks the chancellor's award to Lisa of periodic and lump sum alimony because of her admitted adulterous cohabitation with her boyfriend at the time of the divorce. Wendell presents these issues as follows:

**I. WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN HOLDING THAT THE ENTIRE PROCEEDS OF A PERSONAL INJURY SETTLEMENT RECEIVED DURING THE COURSE OF THE MARRIAGE WERE A MARITAL ASSET AND**

**SUBJECT TO EQUITABLE DISTRIBUTION BY THE COURT.**

**II. WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN HOLDING THAT LISA RENEE COLEMAN TRAMEL WAS ENTITLED TO LUMP SUM AND PERIODIC ALIMONY.**

¶2. After reviewing the record and the applicable law, we find that the proceeds from Wendell's personal injury award were not marital property subject to equitable distribution. We therefore reverse and remand for further proceedings not inconsistent with this opinion.

### FACTS

¶3. Wendell and Lisa Tramel were married in March 1979. They had one child who was born in May 1983. The parties separated twice during their marriage, and Lisa filed for divorce on June 13, 1994, on the grounds of adultery and/or irreconcilable differences. Wendell then filed his own cross-bill[1] for divorce alleging habitual cruel and inhuman treatment and/or irreconcilable differences. Lisa amended her complaint to include habitual cruel and inhuman treatment. The trial court granted Lisa a divorce on the grounds of habitual cruel and inhuman treatment.

¶4. While the parties were married and living in Texas, Wendell suffered a severe work related injury in which his arm was completely severed and later reattached. A settlement was reached, and Wendell and Lisa received a check for $250,000. Out of that $250,000, reimbursements were made for costs advanced, worker's compensation benefits, and attorneys' fees. The $250,000 was made payable to Wendell and Lisa individually and as husband and wife. However, the record is devoid of any indication of what claims Wendell and Lisa each had. We assume that Lisa had a claim for loss of consortium in addition to Wendell's claims for his injury.

¶5. In addition to the lump sum payment of $250,000 to Wendell and Lisa, it was agreed that Wendell or his estate would receive monthly payments of $1,940.71 for the next thirty years or the remainder of his life if he lives longer than thirty years. Wendell or his estate was also guaranteed to receive eight specific lump sum payments every four years until the year 2019:

(a) $ 5,000 - November 1, 1991

(b) $ 10,000 - November 1, 1995

(c) $ 15,000 - November 1, 1999

(d) $ 25,000 - November 1, 2003

(e) $ 40,000 - November 1, 2007

(f) $ 60,000 - November 1, 2010

(g) $ 80,000 - November 1, 2015

(h) $100,000 - November 1, 2019

¶6. These payments, as well as the monthly payments were to Wendell or his estate, not Wendell and Lisa. Both acknowledged and initialed that the payments were to be paid as such. However, when the chancellor began the process of classifying property for purposes of equitable distribution, he classified these monthly and future lump sum payments to Wendell as marital property subject to equitable distribution, and awarded Lisa 40% of all monthly and future lump sum payments. It is with this award that Wendell takes issue. At the time of divorce, Lisa was working as a beautician and had her own shop. Wendell was in extremely poor health, having suffered a heart attack, undergone two hip replacements, and facing two knee replacements in the future. Wendell is unable to work.

**I. WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN HOLDING THAT THE ENTIRE PROCEEDS OF A PERSONAL INJURY SETTLEMENT RECEIVED DURING THE COURSE OF THE MARRIAGE WERE A MARITAL ASSET AND SUBJECT TO EQUITABLE DISTRIBUTION BY THE COURT.**

¶7. This Court reviews the chancellor's decision under the manifest error standard of review. *Ferguson v. Ferguson*, **639 So. 2d 921, 930 (Miss. 1994)**. In the past several years, the Mississippi Supreme Court has made clear that in a divorce action, property deemed marital in nature is subject to equitable distribution. The process regarding equitable distribution is governed by *Ferguson v. Ferguson*, **639 So. 2d 921, 928 (Miss. 1994):**

> Although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
>
> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> a. Direct or indirect economic contribution to the acquisition of the property;
>
> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>
> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3. The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, **639 So. 2d at 928**. In order for property to be divided, it must be "marital property." The Mississippi Supreme Court defined marital property in *Hemsley v. Hemsley*:

Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.

*Hemsley v. Hemsley*, **639 So. 2d 909, 914 (Miss. 1994).**

¶8. Wendell was not injured before the marriage, but during the marriage. However, his proceeds from the injury are attributable to his separate estate outside the marriage. We base this contention on a Mississippi Supreme Court case, ***Regan v. Regan*, 507 So. 2d 54, 56 (Miss. 1987).** In *Regan*, the husband and wife received a $107,000 certificate of deposit as joint tenants as a result of the husband's work related injury on an oil rig. *Id.* The chancellor divided the certificate of deposit equally between the two parties, and on appeal the husband claimed it was error. *Id.*

¶9. The supreme court held that "[t]here is no dispute that the origins of funds reflected by the certificate of deposit was the settlement of Lloyd's maritime personal injury claim arising out of his work on an oil rig for Santa Fe Oil Company in the North Sea in September of 1978." *Id.* The settlement reflected that $225,000 was issued to Lloyd and Jeanette Regan and their attorney, jointly and severally. The supreme court stated, "[t]here is no suggestion that Jeanette suffered any personal injuries. Rather, her name was on the check and she signed a release no doubt as a part of the custom and practice in the settlement of claims such as this that any claims of the wife be extinguished as part of the settlement. Such claims, no doubt, are limited here to claims for loss of society or consortium." *Id.*

¶10. The supreme court continued, stating that while there was evidence that a large part of the settlement proceeds had been expended for the mutual benefit of both parties, there was no indication that Lloyd ever made a gift to Jeanette of half or any of the proceeds. "To the extent that the funds reflected by the certificate of deposit were in fact derived from [sic] Lloyd's maritime personal injury claim, they are his property and may not be ordered shared with his wife as a part of a property division incident to divorce proceedings." *Id.* Accordingly, the supreme court held that the chancellor erred in equitably dividing Lloyd's personal injury proceeds. *Id.* The supreme court held that "the property division should have reflected, pro rata, the extent to which the settlement proceeds were fairly attributable to the respective claims of Lloyd and Jeanette." *Id.* **at 56-57**. The supreme court remanded the case for further findings on what claim, if any, Jeanette had and instructed the chancellor to divide the certificate of deposit according to the proportions of Jeanette and Lloyd's individual claims. *Id.*

¶11. *Regan* allowed the spouse who did not suffer the initial injury to receive at divorce only that part of the proceeds allocable to a loss of consortium. We must determine whether *Regan* is still the complete statement of law in this area, or whether subsequent case law has broadened the rights of the spouse who was not initially injured. In other jurisdictions, the general direction taken in *Regan* is called the "analytical approach," but it does not stop just with loss of consortium. The Georgia Supreme Court offered a well-reasoned explanation of this approach in ***Campbell v. Campbell*, 339 S.E.2d 591, 593 (Ga. 1986):**

> The property which we have found to be outside the marital estate is property which is very personal to the party to whom it belongs and property which was in no sense generated by the marriage. A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it. For the other party to benefit from the misfortune of the injured party would be unfair. However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage. Any amount which is attributable to loss of consortium is not an asset of the marriage but is the estate of the spouse who suffered the loss of consortium.

*Id*. The Georgia Supreme Court reversed the equitable division of personal injury settlement proceeds and remanded for retrial of the issues in accordance with their opinion.

¶12. The Third District Court of Appeal of Florida stated that under the analytical approach, "the inquiry focuses on the elements of damages the particular [personal injury] award was intended to remedy or, stated another way, the purpose of the award." ***Weisfeld v. Weisfeld*, 513 So. 2d 1278, 1281 (Fla. App. 3 Dist. 1987)**. The Florida court recognized that under the analytical approach personal injury damage awards are categorized in three ways: "(1) compensation for the injured spouse for pain and suffering, disability, and disfigurement, (2) compensation for the injured spouse for lost wages, lost earning capacity, and medical and hospital expenses, and (3) compensation for the uninjured spouse for loss of consortium." *Id*. Like other jurisdictions subscribing to the analytical approach, the Florida court held that compensation under category (2) for lost wages, lost earning capacity, and medical and hospital expenses is marital property subject to equitable distribution. ***Id. at 1281-82.***

¶13. Of the three categories into which personal injury proceeds could be placed, the Florida court held that the spouse who did not suffer the initial injury nonetheless at divorce should share in the second and receive all of the third. Only as to the first category, that portion allocable to the initially injured spouse's "pain and suffering, disability, and disfigurement," would the uninjured spouse receive no share. *Id* **at 1281.** We find that our supreme court in *Regan*, writing eleven years ago and before their pronouncements on equitable division, implied that the spouse not initially injured would not share in the second category identified by the Florida court, namely, the compensation for lost wages, lost earnings capacity, and medical and hospital expenses, but was entitled to a remand only for determination of the portion that should be allocated to the third category, namely, the loss of consortium. ***Regan*, 507 So. 2d at 56-57.**

¶14. We hold that the law has changed since then and that we must acknowledge the different current rules regarding distribution of marital assets. Money received to replace wages, earning capacity, and

medical expenses are marital assets to the extent they cover losses that occurred during the marriage. In other words, if the trial court finds that Wendell Tramel received $50,000 to replace wages that he would have earned after the date of the injury and up to the date of divorce, that is as much a martial asset as if he had not been injured and the $50,000 were his actual wages.

¶15. The lines that a chancellor must draw, difficult as they may be, are these:

1) that portion of the proceeds allocable to compensation to the initially injured spouse for pain, suffering, and disfigurement, should be awarded in its entirety to the injured spouse;

2) that portion of the proceeds allocable to lost wages, lost earnings capacity, and medical and hospital expenses, to the extent those apply to the time period of the marriage, are martial assets and are to be divided according to equitable distribution principles; and

3) that portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss.

¶16. The point in category 2) regarding the time period of lost wages and earning capacity, was expressed well in another sister state's analysis of the problem. The North Carolina Supreme Court directed a trial court to determine the portion of proceeds that were allocable to the initially injured spouse's "loss of wage earning capacity subsequent to separation, lost wages subsequent to separation, hospital and medical expenses incurred subsequent to separation." ***Johnson v. Johnson,*** **346 S.E. 2d 430, 439-440 (N.C. 1986)**. Those amounts allocable to the period after separation were the separate property of the initially injured spouse, while the remainder was a martial asset. ***Id.***

¶17. We hold that the chancellor erred in finding that the settlement proceeds resulting from Mr. Tramel's personal injury were entirely marital assets subject to equitable distribution. We reverse and remand for the proceedings necessary to make the allocations required under this opinion. Since the personal injury settlement did not provide much guidance useful for this analysis, the chancellor must perform the alchemy of turning gross sums into clear, detailed portions. To that end, he is entitled to see such evidence and argument as is necessary to make the most informed assessment.

## II. WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN HOLDING THAT LISA RENEE COLEMAN TRAMEL WAS ENTITLED TO LUMP SUM AND PERIODIC ALIMONY.

¶18. The chancellor awarded Lisa $1,000 lump sum alimony and $194.07 monthly periodic alimony. Wendell claims that the chancellor erred in so doing because Lisa was cohabitating with another man at the time of the divorce. The chancellor was aware of Lisa's living situation at the time of the hearing. Wendell has failed to persuade us that the chancellor was manifestly wrong. In fact, the opinion of the chancellor assures us that he took into consideration all of the factors set forth in ***Armstrong v. Armstrong***, **618 So. 2d 1278, 1280 (Miss. 1993).**

¶19. We realize, however, that Lisa's financial award will be altered by the remand of this case. While the chancellor did not err in the alimony award to Lisa, he must take into consideration on remand the outcome of the revised division, if any division at all, of the settlement proceeds. As a result of

the further proceedings, the chancellor may see it necessary to revise the award of alimony. The following cases may be of some assistance to the chancellor in his decision. By citing these precedents we should not be read as suggesting an outcome on remand. Instead, we are only raising relevant issues.

¶20. Subsequent to the supreme court's decision in *Hemsley*, the Mississippi Supreme Court decided **Johnson v. Johnson, 650 So. 2d 1281, 1286 (Miss. 1994)**. *Johnson* also involved a situation where the chancellor subjected non-marital property to equitable distribution. In *Johnson,* the wife claimed inherited timber lands as non-marital property not subject to equitable distribution. *Id.* In holding that the wife's inherited land and other inherited assets that had not been commingled, retained their non-marital character, and thus was not subject to equitable distribution, the court further explained the proper procedure for equitable division of marital property including procedure to be employed when such division leaves a deficit for one party :

> Division of marital assets is now governed under the law as stated in *Hemsley* and *Ferguson*. First, the character of the parties' assets , i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' [sic] nonmarital property. *Ferguson*, 639 So. 2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift acquired nonmarital property.

*Johnson*, **650 So. 2d at 1287.**

¶21. *Johnson* states that even where a deficit exists, title to non-marital property may not be divested, but alimony may still be based upon the value of that non-marital property. There exist other equitable alternatives to secure payment of support monies pursuant to *Johnson*'s pronouncements, including the power of the chancery court to impose an equitable lien to secure payment of alimony or child support. **Maslowski v. Maslowski, 655 So. 2d 18, 21 (Miss. 1995)**. The authority to grant an equitable lien is governed by section 93-5-23 of the Mississippi Code. *Id. **See also Lindsey v. Lindsey*, 612 So. 2d 376, 380 (Miss. 1992)** (holding court's authority to grant equitable lien in divorce proceedings is supported by section 93-5-23). The supreme court delineated the characteristics of an equitable lien in *Lindsey v. Lindsey***, 612 So. 2d 376, 380 (Miss. 1992):**

> Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession.

*Lindsey***, 612 So. 2d at 380**. An equitable lien can arise as the result of a contractual agreement. *Maslowski***, 655 So. 2d at 21.** Additionally, the chancery court has the power to impress a lien as security for a judgment. *Id.* "In *Dunn v. Dunn*, 609 So. 2d 1277, 1283-84 (Miss. 1992), the

chancellor ordered an equitable lien against the husband's interest in the homestead to secure the payment owed to the wife by the husband's business. The Mississippi Supreme Court has also said that the payment of alimony may be secured by an equitable lien." ***Maslowski*, 655 So. 2d at 23**(citations omitted).

¶22. The chancellor cannot divest Wendell of his non-marital personal property to pay alimony. However, if a deficit exists, the chancellor does have the option of securing alimony payment by an equitable lien against Wendell's property.

¶23. We reverse and remand this cause for further proceedings regarding the disposition of the settlement proceeds, and what, if any, amount is subject to equitable distribution.

**¶24. THE JUDGMENT OF THE PANOLA COUNTY CHANCERY COURT IS REVERSED AND THIS CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL TAXED TO APPELLEE.**

**THOMAS, P.J., COLEMAN, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR. PAYNE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. McMILLIN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

PAYNE, J., CONCURRING:

¶25. I concur with the result the majority has reached in this case, but I do not agree with the majority's reliance on ***Regan v. Regan*, 507 So. 2d 54, 56 (Miss. 1987)**, for the proposition that proceeds from a personal injury judgment are attributable to the injured spouse's separate estate outside the marriage. Although the majority correctly states the proposition for which *Regan* stands, I believe that *Regan* no longer has a place within current domestic relations law, and I therefore would not cite it as authority. I base this contention on the fact that the decision in *Regan* was handed down seven years before ***Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), and *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994).** The timing is more significant than it may appear at first glance. Both *Ferguson* and *Hemsley* completely transformed the way in which property is to be distributed in a divorce proceeding. ***Hemsley*, 639 So. 2d at 914**, gave us a definition for "marital property" and ***Ferguson*, 639 So. 2d at 928**, set out the guidelines upon which an equitable distribution should be based. Each of these cases firmly established that non-economic contributions to the accumulation of property within a marriage are just as important as economic contributions when it comes to equitably distributing marital property.

¶26. *Regan*, however, was decided in a climate that had not yet recognized the importance of a spouse's non-economic contributions to the accumulation of a couple's marital property. As such, I believe it is error, in light of *Ferguson* and *Hemsley*, to cite *Regan* as authority. Granted, at the time *Regan* was decided, it was clear that the supreme court believed the proceeds from a personal injury were personal to the one suffering the injury and therefore a part of his separate estate. Now, however, I do not believe that we can say with confidence that our supreme court following the decisions in *Ferguson* and *Hemsley* would decide *Regan* the same way. This is not to say that

proceeds from a personal injury settlement can never be deemed the property of the party injured. I simply believe that this decision must be reached on a case by case basis keeping in mind the guidelines of *Ferguson*.

¶27. Beyond *Ferguson* and *Hemsley*, however, it seems to me that a comparison of personal injury proceeds with retirement funds and pension plans is an analogy that need not be overlooked. While I recognize the obvious differences between retirement funds and personal injury proceeds, I cannot avoid the obvious similarities. Since Mississippi has become an equitable distribution state, retirement funds and stock accumulated during the marriage are considered distributable even though only one spouse may have contributed the funds for the investment. *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994).[2] Retirement and pension funds are accumulated to care for the spouses in their old age when they may not be able to be gainfully employed. By the same token, personal injury suits in large part are based on the fact that the injury shortens the period of time that one can accumulate funds as a hedge against need in old age. The settlement funds would be for the security of the family because the breadwinner is disabled by the injury caused by the defendant. Were the marriage to continue, the settlement would be the source out of which that security for meeting the wife's needs would come. Therefore, it would violate the principle of equitable distribution to say that the woman because of divorce no longer needs that security that would have been met in the marriage.

¶28. In the case of *Heigle v. Heigle*, 654 So. 2d 895, 897 (Miss. 1995), the wife inherited a great deal of money that she placed in a joint account that the family used to purchase cattle, and to pay other family expenses. The court held that the presence of the inherited funds in the joint account made the wife's inheritance lose its status as separate property. *Id.* Clearly, it is the law in this state that when funds of one spouse are used for the family even in small part, they are considered to be marital assets.

¶29. Turning to the case at hand, where the proof shows that the early part of the settlement was disbursed for family needs, I would hold that the whole settlement had become marital assets and would be subject to equitable distribution. However, in this case, the chancellor considered all the factors, following all the case and statutory mandates, and achieved equity in the overall scheme of their finances. I just do not want to be heard to be saying that we adopt any hard and fast rule that would diminish the right of a spouse to have an interest in the retirement or settlement funds of the other spouse.

**DIAZ, J., JOINS THIS SEPARATE WRITTEN OPINION.**

McMILLIN, P.J., DISSENTING:

¶30. I respectfully dissent. If *Regan v. Regan* is binding precedent in this State as the majority suggests, then it appears to me that the result reached in this case directly violates the rule announced in that decision. *Regan v. Regan,* 507 So. 2d 54 (Miss. 1987). Mr. Regan was injured on an oil rig. His injury claim was settled for $225,000 and the check was issued jointly to Regan and his wife. The supreme court held that the wife's only right to share in the settlement was that part reasonably calculated to compensate her for a loss of consortium claim. The court specifically said that "[t]o the extent that the funds reflected by the certificate of deposit were in fact derived from [Mr. Regan's] personal injury claim, they are his property and *may not be ordered shared with his wife . . . ." Id.* **at 56** (emphasis supplied). No differentiation was permitted between the various factors that went into

the calculation of the personal injury claim itself. Certainly, it cannot be doubted that the settlement amount was based, in part, on compensation to Mr. Regan for lost wages, lost earning capacity, and, in all probability, medical and hospital expenses. Yet the supreme court was clear in insisting that, except for dividing out the portion of the settlement fairly attributable to Mrs. Regan's loss of consortium claim, the chancellor was without authority to order any sharing of the settlement.

¶31. The *Regan* decision had the effect of putting personal injury damage awards in the same class as property brought to the marriage by one spouse or property inherited by one spouse and, therefore, not normally subject to equitable division. The only division permitted by *Regan* was to calculate and set apart the separate damages suffered by the physically injured spouse and those incurred by the uninjured spouse by way of loss of consortium. That calculation has nothing to do with equitable division of marital assets.

¶32. The majority, on the other hand, proposes to further divide the physically injured spouse's damage award into two sub-accounts -- (a) one representing lost wages, medical bills and related elements, and (b) one representing compensation for pain and suffering. The majority then holds that the amount in the first sub-account may be treated as marital property subject to equitable division.

¶33. I do not quarrel with the equity of what the majority suggests. In fact, I think it is more equitable than the result dictated by the *Regan* decision. I simply think it is beyond the authority of this Court. Subsequent developments in the law of equitable distribution, as marked by such decisions as ***Hemsley v. Hemsley,* 639 So. 2d 909 (Miss. 1994)** and ***Ferguson v. Ferguson,* 639 So. 2d 921 (Miss. 1994),** may strongly suggest that, given the opportunity, the supreme court would reconsider its holding in *Regan* and permit all or some portion of a personal injury damage award to be treated as marital property. However, that is a question this Court is not authorized to answer. If that question is to be resolved in this case, it must be done by the Mississippi Supreme Court after granting certiorari.

¶34. I agree that the case must be reversed and remanded; however, I disagree with the instructions given to the chancellor on remand that order him to classify some part of the settlement as a marital asset subject to equitable division. Of course, that conclusion does nothing to prevent the chancellor from adequately providing for Mrs. Tramel's future financial security through some means other than awarding her a share of the settlement proceeds.

¶35. Mrs. Tramel, under the *Regan* decision, is entitled to have set apart to her from the settlement an amount found to fairly represent compensation for her loss of consortium claim. That should certainly be accomplished on remand. However, under the law as it now stands, it seems to me that such a division exhausts her right to share directly in those funds and we err when we hold otherwise.

---

1. This Court would like to comment to the bar and trial bench that language such as "cross-bill" and "decree" of divorce is outdated. Rule 81(f) of the Mississippi Rules of Civil Procedure states that a cross-bill shall be a counterclaim or cross-claim, and a decree shall be a judgment. *See also* Mississippi Rule of Civil Procedure 13(a) and Mississippi Rule of Civil Procedure 54(a).

2. *See also Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997) (finding that the court must consider the wife's retirement account and stocks amassed during marriage as well as husband's); *Arthur v. Arthur*, 691 So. 2d 997, 1003 (Miss. 1977) (holding that pension funds are subject to distribution except for that portion accumulated prior to marriage and interest thereon); *Magee v. Magee*, 661 So. 2d 1117, 1124 (Miss. 1995) (holding that husband's pension and 401(K) funds were subject to equitable distribution); *Savelle v. Savelle*, 650 So. 2d 476, 478 (Miss. 1995) (holding that wife was limited to half of husband's contribution during the marriage to his pension plan and that neither spouse has a vested interest in the other's pension fund, but that all circumstances must be considered to establish equity); *Pierce v. Pierce*, 648 So. 2d 523, 525 (Miss. 1994), cert. denied 515 U.S. 1160 (holding that military pension is subject to equitable distribution; [pre-*Hemsley*] *Draper v. Draper*, 627 So. 2d 302, 306 (Miss. 1993) (finding that wife contributed to couple's accumulation of wealth and standard of living so there was no error in awarding her a percentage of husband's retirement).

Mrs. Tramel's involvement in the home which could have entitled her to a portion of Mr. Tramel's retirement funds did not stop because her husband was injured and incapacitated.