## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01333-SCT

*JOHN COLEMAN STEWART*

*v.*

*LISA GAIL STEWART*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/18/2002 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PAUL E. ROGERS |
| ATTORNEYS FOR APPELLEE: | JULIE ANN EPPS |
| | E. MICHAEL MARKS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this domestic relations case we review the chancellor's findings of marital assets and property division in a divorce proceeding. This Court is asked to determine whether the trial court erred in awarding the wife one-half of the value of the personal property, which the trial court classified as marital property and whether the trial court erred in awarding the wife twenty percent of the insurance proceeds from the fire loss of the marital home and twenty percent of the proceeds from the sale of the lot. We find no error and affirm the judgment of the trial court.

### FACTS

¶2.     Prior to June 9, 1999, John Coleman Stewart proposed marriage to Lisa, and she accepted.  Lisa participated in choosing the house that John then purchased on June 9, 1999.  On June 25, 1999, John and Lisa were married at the house John purchased on June 9 for $140,000.  The property included the house and five to seven acres of land.  John procured the credit to finance the original loan, and later he obtained permanent financing.

¶3.     In February 2000, Lisa signed a deed of trust.  Lisa believed the house was hers as well as John's and expended her personal money and labor and that of her parents on improving the house.  During the marriage, John and Lisa renovated the house and made additions to it with John providing most of the cash used for the additions and Lisa and her family providing much of the labor and some of the materials.  John testified that he spent $50,000 to $60,000 of his personal premarital funds on improvements.

¶4.     The couple resided at that same house together until August 4, 2000, when they separated.  Upon separation, John and Lisa divided their personal property.  Without John's objection, Lisa took the property that she brought into the marriage and the personal property that the parties had acquired during the marriage.  Lisa moved back to the manufactured home in which she resided prior to the marriage.  John remained in the home the couple shared as husband and wife and that he purchased just weeks prior to the marriage.

¶5.     On August 17, 2000, Lisa sued John for divorce on grounds of uncondoned adultery, habitual cruel and inhuman treatment, and irreconcilable differences.

¶6.     In October 2000, the home Lisa and John had lived in during their marriage was burned in a fire and completely destroyed.  The home was insured for $201,000, and the mortgage balance was $146,000.  The contents were insured for $50,000.  John received $55,000 from the insurance company for the loss of the home after the mortgage was paid and $50,000 for the loss of the contents.

¶7.     On February 21, 2001, Lisa filed by agreement of the parties an amended complaint for divorce, requesting one-half of the insurance proceeds generated from the fire loss.   Lisa and John each had certain personal property, prior to the marriage, which he or she brought to the house and used together during the marriage.  Also, the two acquired additional personal property during the marriage.

¶8.     Before trial, John sold the lot upon which the home had been located for $42,000 to his sister, though at trial, he had not received payment from his sister for the lot.  John loaned $40,000 of the insurance money to a friend in Florida, purchased an automobile for more than $47,000, and spent the rest of the insurance money on travel.

¶9.     Trial was held on October 8, 2001, and on October 16, 2001, a judgment for divorce was entered.  A bench ruling was rendered on December 17, 2001, which was incorporated into the final judgment entered on January 18, 2002, awarding Lisa $34,579.00, representing twenty percent of the insurance proceeds for the loss of the home, twenty percent of the proceeds from the sale of the lot, and equal division of the personal property.  On January 28, 2002, John filed a motion for reconsideration that the court heard on May 9, 2002, and on July 22, 2002, the court entered an order denying the motion. John then filed the appeal now before this Court.

### STANDARD OF REVIEW

¶10.    The standard of review for distribution of property in divorce cases has been clearly established by this Court, as outlined in *Owen v. Owen*, 798 So.2d 394, 397-98 (Miss. 2001) and repeated in *Bunyard v. Bunyard*, 828 So. 2d 775, 776-77 (Miss. 2002):

> Such division and distribution "will be upheld if it is supported by substantial credible evidence." *Carrow v. Carrow*, 642 So.2d 901, 904 (Miss.1994). . . .  The chancellor's findings will not be disturbed "unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss.1990).

3

## LAW AND ANALYSIS

**I.      WHETHER THE TRIAL COURT ERRED IN AWARDING LISA ONE-HALF OF THE VALUE OF THE PERSONAL PROPERTY WHICH THE TRIAL COURT CLASSIFIED AS MARITAL PROPERTY.**

¶11.    John argues that he and Lisa did not commingle their funds and personal property, and for that reason, the chancellor erred in determining that his personal property prior to the marriage was marital property to be distributed equitably.  John cites two Court of Appeals cases in support of his argument: *Wilson v. Wilson*, 820 So. 2d 761, 763 (Miss. Ct. App. 2002), and *Brown v. Brown*, 797 So. 2d 253, 256 (Miss. Ct. App. 2001).  The Court of Appeals decisions are not binding on this Court, and there is ample authority from our prior cases to guide this Court's decision.

¶12.    The first step in property distribution as a result of divorce is to classify the property as either marital property or non-marital property based on *Hemsley v. Hemsley*, 639 So.2d 909 (Miss.1994), which defined marital property for divorce proceedings as

> any and all property acquired or accumulated during the marriage.  Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor.  We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.

639 So. 2d at 915.  *See also* ***Waring v. Waring***, 747 So.2d 252, 255 (Miss. 1999).  Separate property that has been "commingled with the joint marital estate" also becomes marital property subject to equitable distribution.  ***Johnson v. Johnson***, 650 So.2d 1281, 1286 (Miss. 1994).  *See also* ***Maslowski v. Maslowski***, 655 So.2d 18, 20 (Miss. 1995).  "Assets which are classified as non-marital, such as inheritances, may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary."  ***Boutwell v. Boutwell***, 829 So.

2d at 1221 (Miss. 2002) (citing *Heigle v. Heigle*, 654 So.2d 895, 897 (Miss.1995); *Johnson*, 650 So.2d at 1286).

¶13.    John argues that he and Lisa did not commingle their personal property and that they maintained separate checking accounts and filed separate tax returns; therefore, his personal property prior to the marriage should remain his separate property.  The chancellor considered the facts in this case along with this Court's prior rulings in *Hemsley* and *Johnson* in determining the marital or non-marital character of the personal property in question.  Accordingly, the trial court found that

> the personal property brought into the home of the parties on Monterey Road in Rankin County, all of which was subject to familial use, lost its character as premarital property and became marital property subject to equitable distribution, just as did the residence at Monterey Road.

The chancellor also found that both John and Lisa paid household bills and participated in maintaining the household.  Evidence in the record supports these findings.  When a chancellor makes findings that are not clearly erroneous, this Court will not disturb his findings.  *Bell*, 563 So. 2d at 596-97.

¶14.    After the classifications have been established, the chancellor analyzes the case according to the following factors found in *Ferguson v. Ferguson*, 639 So.2d 921, 928 (Miss. 1994):

> 1. Substantial contribution to the accumulation of property
>     a. direct or indirect economic contribution
>     b. contribution to stability and harmony of the marital relationship measured by quality, quantity of time spent on family duties and duration of marriage.
>     c. contribution to the education, training bearing on the earning capacity of spouse accumulating assets.
> 2. Degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of assets.
> 3. Market value and emotional value of assets subject to distribution.
> 4. Value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse.
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.

6. Extent to which property division may be utilized to eliminate periodic payments and other potential sources of friction.

7. Needs of the parties.

8. Any other factor which in equity should be considered.

¶15.    The trial court made a detailed analysis of each of these factors in this case, and determined that though John and Lisa kept their monies separate and filed separate tax returns, they each contributed something to the marital home and intended familial use of their premarital property. Under the circumstances, the chancellor decided equity would best be served by a equal division of the personal marital property between Lisa and John. Finding that the evidence presented in the record is consistent with the trial court's judgment, we affirm the trial court's ruling as to the marital property division.

## II.    WHETHER THE TRIAL COURT ERRED IN AWARDING LISA TWENTY PERCENT OF THE INSURANCE PROCEEDS FROM THE HOUSE AND TWENTY PERCENT OF THE PROCEEDS FROM THE SALE OF THE LOT.

¶16.    The trial court used the same case law as discussed above to analyze the character of the proceeds and real property, which he classified as marital in nature due to the lost home being the former marital home. That determination is in line with this Court's holding in *Boutwell* that the wife's inherited home was the marital home and as such should be considered marital property. See *Boutwell*, 829 So. 2d at 1221.

¶17.    Next, the trial court determined what distribution would be equitable. The trial court completed analysis of the facts using the *Ferguson* factors. Due to its consideration of the fact that John made a substantially larger monetary contribution to the purchase of the home and the insurance, the trial court found a property division of eighty percent to John and twenty percent to Lisa to be equitable. The chancellor gave some weight to Lisa's help with improvements, payment of utility and some food bills, and

6

contribution to harmony of the home in declaring her entitlement to twenty percent of the insurance proceeds and lot sale proceeds.

¶18.    This Court, finding no error in the property distribution, affirms the trial court's judgment.

## CONCLUSION

¶19.    The trial court followed the guidelines we provided in *Boutwell*, which followed *Hemsley*, *Johnson*, and *Ferguson,* in classifying and distributing property in divorce proceedings.  We hold that the trial court did not err in awarding Lisa one-half of the personal property that the chancellor correctly classified as marital property, nor did the chancellor err in awarding Lisa twenty percent of the insurance proceeds from the marital home destroyed by fire and twenty percent of the proceeds from the sale of the lot upon which the marital home was located.  The trial court judgment is affirmed in its entirety.

¶20.    **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.  COBB, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**