650 So.2d 1281 (1994)
Kendall Wayne JOHNSON
v.
Laura Jane Smalley JOHNSON.
No. 92-CA-00957.
Supreme Court of Mississippi.
December 21, 1994.
Rehearing Denied March 23, 1995.
*1283 Michael P. Younger, Chapman & Younger, Brandon, for appellant.
Mark A. Chinn, Patricia E. Herlihy, Chinn & Associates, Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:
This domestic relations appeal concerns the awards of child support and property division that the chancellor awarded Laura Jane Smalley Johnson (hereinafter "Jane"), at the divorce from her husband, Kendall Wayne Johnson (hereinafter "Wayne"), on the uncontested grounds of Wayne's adultery.

I.
Wayne appeals the issues of (1) child support, (2) the mortgage note, (3) the retirement, savings plans and Employee Stock Ownership Plan (ESOP), and (4) attorney's fees. Wayne claims these financial awards are excessive beyond his ability to pay, and against the overwhelming weight of evidence which demonstrates Jane's independent, nonmarital assets.[1] Wayne seeks reversal and remand to the trial court for the purpose of balancing more equitably the estates of the parties.
This Court reverses and remands the chancellor's awards, in light of the discussion below.

II.
Kendall Wayne Johnson and Laura Jane Smalley Johnson married June 29, 1962. Three (3) children, Kendall, Jr., Kyle, and Kristin, were born of this marriage, two of whom were minors at the time of the divorce. At the time of trial Kyle, the oldest of the minor children, was eighteen (18) years of age and attended college while Kristin, the minor daughter, was a thirteen (13) year old high school student. Kyle will reach twenty-one (21), the age of majority, on April 9, 1995, while Kristin will reach majority on June 19, 2001.
*1284 Wayne is a fifty (50) year old executive with Mississippi Power and Light Company (MP & L). At the time of trial in July of 1992, Wayne was a "division director" earning a gross monthly salary of approximately $7,371, the equivalent of $88,450 annually.
Jane, Wayne's wife of thirty (30) years, is a fifty (50) year old homemaker who received a high school diploma and attended a year of music school. Jane worked as an office worker and bank teller for one or two years prior to the birth of her first child in 1968, but has not worked since that time. She has no professional training.
Kendall, Jr., the oldest son, was twenty-three (23) years old at the time of trial and lived in Madison. He has a history of mental problems necessitating lengthy and expensive hospitalizations. Unpaid medical bills for Kendall, Jr.'s treatment resulted in Wayne having a $113,000 judgment against him, plus attorney's fees, for a total indebtedness to the hospital of $142,000. Wayne has assisted Kendall by paying Kendall's car notes, medical insurance, medicine, and by giving him spending money.
During the marriage, Jane acquired nonmarital assets that she inherited from her parents. This included $50,000 in cash (held in a certificate of deposit in her own and her children's names), $3,200 in a checking account, a dwelling house in Purvis valued at $40,000, some timber land in Lamar and Forrest Counties worth approximately $98,000, and marketable timber valued at $95,000. Four timber cuttings over a 12 year period yielded $153,000.00 and Wayne used the proceeds to pay family expenses, to add to Wayne's savings account, and to purchase a 1984 van titled to Wayne. However, from 1989 to the time of the divorce hearing, Jane had borrowed $56,000 against her nonmarital assets with which to support herself.
There was a mutual decision by Wayne and Jane that Jane cease working after the birth of Kendall, Jr. in 1968 and devote her full time and energy to taking care of the children of the marriage. Wayne acknowledged that he and Jane made a family decision that there would be a division of labor in the marriage with Wayne as the "breadwinner" and Jane as the "caretaker" of the household and the family.
In addition to earning a gross monthly salary of $7,371 with Mississippi Power and Light, Wayne, at the time of the divorce, had a vested interest in an employee savings plan with MP & L valued at $45,415 as well as an employee stock ownership plan valued at $6,523. Wayne testified his retirement plan was funded entirely by MP & L and had no present cash value. There will be no benefits unless he reaches age 65.
The parties separated on June 4, 1990, and on February 27, 1991, Jane filed a Complaint For Divorce against Wayne, alleging she was entitled to a divorce and custody of the two minor children, child support, use and possession of the marital home and its furnishings, periodic and lump sum alimony, life and health insurance, use and possession of the 1984 van, and attorney's fees.
The chancellor awarded Jane $1,116 monthly in child support, and the sole use of the marital home, with Wayne paying the mortgage debt. The chancellor granted Wayne the option of discontinuing the mortgage payments upon the children's majority, upon granting Jane all equity in the property. Jane received a fifty percent interest in Wayne's retirement plan, his employee stock ownership plan, and his employee savings plan. Jane received title to the couple's 1984 van. The chancellor ordered Wayne to maintain medical insurance for the children during their minority and for Jane for three years. The chancellor ordered each parent to pay 50% of college expenses for attendance at a state-supported institution.

III.
Testimony from both Jane and Wayne established that, during the course of the thirty (30) year marriage, Jane made both monetary and domestic contributions to the marriage. Jane contributed $153,000 from her nonmarital assets toward expenses of the *1285 family. Wayne, who was in complete control of Jane's finances, replaced $66,000 of this amount. The chancellor found that Wayne had present and future "great earning potential" in his position as a supervisor at Mississippi Power and Light, as opposed to his wife, whose only anticipated income was the timber proceeds from logging and rental income of her inherited property.
The total amount of income tax refunds claimed by Wayne during the years 1983 through 1988 was $34,600 which is the equivalent of $5,766 per year or $480 per month. These large refunds were explained by John Campbell, a CPA, who was certified as an expert in accounting by the chancellor. Campbell analyzed the income tax returns filed by Wayne from 1983 to 1988 and compared Wayne's returns with the amount of money withheld each year. Campbell concluded that Wayne withheld too much money from his paychecks. If Wayne took the appropriate deductions during the year 1992, he would have a monthly after-tax income of $5,581 instead of $3,500 reflected on his financial declaration.
Campbell also analyzed the monthly budget prepared by Wayne and introduced as Exhibit 11. Campbell discerned that $1,956 was attributable exclusively to Wayne's living expenses. Based upon a comparison of Wayne's actual net take-home pay of $5,581 versus Wayne's actual personal monthly expenses of $1,956, Campbell concluded that Wayne had the financial ability to pay to Jane the amount of $3,300 a month and still provide a decent living for himself.

IV.
There are four issues at the crux of this appeal. First, Wayne asserts that the award of 1/2 interest in his various retirement and pension plans was error. He asserts that the disparity of the spouses' estates precludes such an award. Second, Wayne asserts his payments of child support are excessive and in manifest error. Third, Wayne asserts that the future release from payment of a house note, where his wife and children currently live, in exchange for total divestiture of his interest in the house, was error. He claims the chancellor was manifestly wrong in providing this option, arising after the children reached majority, and constructively taking away his equity. Fourth, Wayne claims that the chancellor's award of attorney's fees is manifestly wrong. He asserts that there was no finding in the record of Jane's inability to pay, precluding such an award.
Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. McEwen v. McEwen, 631 So.2d 821, 823 (Miss. 1994). Turning to the merits of the case, this Court will first address the property distribution concerning the division of Wayne's pension plans.

A. Property Division Issues
To determine whether there was an abuse of discretion in the award, this Court must first examine the proper legal classifications of the assets claimed by both parties. Only then can this Court determine whether the property division was equitable.
Wayne contends the chancellor was manifestly wrong in awarding to Jane a one-half interest of the present value in his retirement plan with MP & L, his savings plan with Entergy Corporation, and his employee stock ownership plan (ESOP). However, these assets accumulated during the marriage are, for the purpose of this divorce, marital property "subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." Hemsley v. Hemsley, 639 So.2d 909, 914, 915 (Miss. 1994). Despite Wayne's assertions, under Hemsley these assets are marital property properly subject to equitable distribution. Id. Pursuant to Hemsley, this Court assumes that Jane's domestic contributions are equally as *1286 valuable as the contributions made by Wayne toward his retirement and savings plans. Id. at 915.
Jane inherited assets during the marriage and, at the time of the divorce, had allowed some of these assets, i.e., monies from timber sales, to be used for the benefit of the entire family.[2] She had received a combined total of $153,000 from the sale of trees in 1979, 1985, and 1988. Practically all of this money was used for the benefit of the family or placed in savings accounts controlled by Wayne. Wayne returned $66,000 of this amount to Jane. Jane claims this inherited property, i.e., timber lands, constitutes nonmarital property and Wayne offers no proof to the contrary. Jane initially met the requirements of Hemsley, i.e., she rebutted the presumption that her inherited real property was marital property subject to equitable distribution. When, however, she commingled the monies received from the sale of timber, she converted these nonmarital assets to marital assets, subject to equitable distribution unless subject to an agreement to the contrary.
Jane also inherited assets that were never commingled with funds for the family. Again, Wayne does not dispute the nonmarital character of these assets; therefore, the Hemsley presumption is rebutted and these assets are not subject to equitable distribution. This nonmarital property consists of a rental house, timber land, and marketable timber, as described in the statement of facts. However, there was a lien of $55,913 on a rental dwelling and Lamar County timber land. Jane testified that she had been forced to borrow over $58,000, including the money advanced under the lien, to support herself and her children since the filing of the divorce. Jane, as of July 14, 1992, also had accounts payable in the amount of $4,585.
In the case sub judice it is undisputed that the assets inherited by Jane are attributable to Jane's nonmarital estate. However, that portion of those assets which were commingled with the joint marital estate, i.e., timber sales, for the use of the family had, at the time of trial, lost their nonmarital character by commingling. See Nelson v. Nelson, 611 So.2d 1113, 1115 (Ala. Civ. App. 1992) (commingled funds are marital assets subject to equitable distribution). Any assets inherited by Jane but not commingled retained their nonmarital character. Hemsley, 639 So.2d at 914. The $66,000.00 paid back to Jane by Wayne reacquired its nonmarital character by virtue of Wayne's actions. Id.
Wayne had no nonmarital estate of his own. As previously stated, his pension and retirement plans are presumptively part of the marital estate for purposes of divorce, as they were acquired by the efforts of both Jane and Wayne during the course of the marriage. Hemsley, 639 So.2d at 914, 915. Consequently, these plans are subject to equitable division pursuant to Hemsley. Id. As to liabilities, Wayne also has a $142,000 judgment against him, based on medical bills to a hospital and clinic, incurred by his son Kendall.[3] Wayne signed for payment of these bills and this debt is not the subject of any issue presented to this Court. Nonetheless, this debt must be considered in any equitable distribution of property as it affects Wayne's net income, a Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994) factor. If the question of alimony is reached, the debt would again be a factor for consideration.
*1287 Jane had average monthly expenses of at least $2,600, plus liability for one-half uncovered medical expenses, college expenses, and all maintenance and repair on the home. She had no professional skills and no salary income. In contrast, Wayne had an effective net salary, according to the chancellor, of $66,900 annually.
Division of marital assets is now governed under the law as stated in Hemsley and Ferguson. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property. Ferguson, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.[4] This process does not require divestiture of inherited or gift-acquired nonmarital property.
However, this Court cannot determine whether the chancellor abused his discretion until he provides a record of his determination of both parties' nonmarital assets, of his equitable distribution in light of each parties' nonmarital property, guided by the Ferguson factors, and, if necessary to do equity, of any award of alimony. Due consideration should be given to Wayne's $142,000.00 debt. This Court must, therefore, remand for reexamination of the entire case. After consideration of the parties' nonmarital estates and of the marital estate, the chancellor may adjust his awards to do equity, and has considerable latitude in doing so. Ferguson, 639 So.2d at 927; Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988).

B. Child Support Issues
The chancellor awarded to Jane monthly child support in the sum of $1,116, to be reduced to $800 a month upon the emancipation of one child. Wayne claims this amount is excessive. Jane, on the other hand, claims it constitutes 20% of Wayne's net take-home pay and is within the statutory guidelines.
"[A]n award of child support is a matter within the discretion of the chancellor[,] and we will not reverse that determination unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss. 1992). "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Gillespie, 594 So.2d at 622.
The chancellor may accept as true the testimony of John Campbell, or any other certified public accountant. This is because "the chancellor is the judge of the weight and worth of the testimony" in a divorce proceeding. Dubois v. Dubois, 275 So.2d 100, 101 (Miss. 1973); see also Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967). According to Campbell, if Wayne were to take the appropriate deductions during the year 1992, he would have a monthly after-tax income of $5,581 rather than the $3,500 reflected on his financial declaration.
The child support award guidelines found in Miss. Code Ann. § 43-19-101(1) (1972) provide that where, as here, there are two (2) children who are due support, the percentage of adjusted gross income suggested for their support is 20%. The amount of $1,116 is exactly 20% of $5,581, which is, as far as this Court can glean from the record, Wayne's adjusted gross income figured pursuant to § 43-19-101(3).
The chancellor awarded Jane $1,116 in child support and ordered Wayne to pay *1288 the $856 house note, not including $110 in taxes and insurance.[5] Since the chancellor refused to award periodic or lump-sum alimony, this note payment must be in the form of child support. In effect, this is a total monthly award of $2,192 for child support.
This amount of child support raises the percentage award of adjusted gross income for child support over the statutory percentage. The new figure is $2,192/$5,581, or 39.28 percent of Wayne's adjusted gross income.
However, a chancellor can depart from the guidelines with written findings of their inappropriateness. McEachern v. McEachern, 605 So.2d 809, 813-14 (Miss. 1992). Without a written justification, such a departure is error by law and reversible. Upon remand, the chancellor should reconsider this award and may make appropriate findings on the record for future adjustments, as necessary.

C. The House Mortgage Issue
The chancellor ordered Wayne to pay the monthly house note, together with all taxes and insurance, on the marital home in Brookhaven which was awarded to Jane. The amount of this payment, according to Wayne's financial declaration, was $966 per month, including the taxes and insurance, which Wayne paid separately. This issue is discussed above.
The chancellor also provided Wayne with an escape provision with respect to the longevity of this obligation. Wayne has the option, upon the children's reaching their majority, of either continuing the monthly payments or deeding his one-half interest in the marital home to Jane in exchange for terminating his future liability on the note.
Wayne contends the "escape" provision operates to constructively take away his equity in the marital home and is beyond the authority vested in the chancellor. Jane, on the other hand, claims our case law vests in the chancellor broad authority in making provisions for spouses in divorce cases and that the chancellor did not abuse his discretion in this case.
Of special interest is the escape clause which, at Wayne's option, would operate to divest him of his one-half interest in the marital domicile. This Court has held that our law vests in the chancery court authority to order an equitable division of marital property, "including the transfer of title to real property." Ferguson v. Ferguson, 639 So.2d 921, 934 (Miss. 1994); Hemsley v. Hemsley, 639 So.2d 909, 913-15 (Miss. 1994); Draper v. Draper 627 So.2d 302, 305 (Miss. 1993); Jones v. Jones, 532 So.2d 574, 578 (Miss. 1988).
This Court declines to state that such an optional divestiture is error, in light of cases allowing mandatory divestiture. Wayne himself can weigh the benefits and detriments and escape further liability on the house note if he wishes to do so. This issue is also remanded for further consideration.

D. Award of Attorneys' Fees
Wayne claims that Jane was not entitled to an award of attorney's fees because she had the assets to pay her own attorney. This argument is persuasive.
Jane was awarded $5,000 in attorney's fees. The record reflects that Jane had paid $1,000 in fees to Marsha Smalley, her first attorney. Mr. Chinn, her second attorney, prepared and submitted a detailed statement of fees and services totaling at least $5,000.
The chancellor failed to make a finding that Jane was unable to pay her attorneys' fees, a factor necessary in making such an award. McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). Jane has a considerable nonmarital estate. The chancellor abused his discretion in awarding Jane attorney's fees without a finding that she was unable to pay *1289 them. This Court reverses the award of attorney's fees for the trial court's review on remand.
JUDGMENT IS REVERSED AND REMANDED FOR REDETERMINATION NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] For purposes of terminology in equitable distribution jurisdictions such as Mississippi, property subject to equitable distribution is termed "marital property." 1 Ann Oldfather, Janice E. Kosel, et al, Valuation and Distribution of Marital Property, § 3.03[2][a] at 3-13 (1994 ed.). Property not subject to equitable distribution is termed "nonmarital property." Id.

In community property states, all property acquired during marriage by the efforts of both spouses is community property. Id., § 20.02[1] at 20-19. Property owned by either spouse before marriage, as well as the property of one spouse gained through inheritance or gift, for example, is separate property. Id.
[2] This Court recognizes that property clearly obtained by one party through inheritance or acquired by one party by gift is nonmarital property not subject to equitable distribution. Hemsley, 639 So.2d at 914. In doing so, this Court follows other equitable distribution states that distinguish these types of property from the marital estate. See Hussey v. Hussey, 280 S.C. 418, 312 S.E.2d 267, 270 (Ct.App. 1984) (holding inherited property is not part of marital estate subject to equitable distribution). See also Wagner v. Wagner, 4 Va. App. 397, 358 S.E.2d 407, 410 n. 3 (1987) (acknowledging that gift property is part of spouse's nonmarital estate).
[3] Wayne actually owed $225,000 to various businesses for home loans and credit cards, among other bills. However, the single greatest liability was the $142,000 judgment against Wayne personally.
[4] The source of the payor's assets has never been a factor in the determination of a lump sum alimony award. Bland v. Bland, 629 So.2d 582, 587 (Miss. 1993); Pratt v. Pratt, 623 So.2d 258, 262 (Miss. 1993); Tilley v. Tilley, 610 So.2d 348, 352 (Miss. 1992); Smith v. Smith, 607 So.2d 122, 126 (Miss. 1992).
[5] The chancellor indicated that the house payment "indicate(s) an obligation to the family unit, during the children's minority."