# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00272-SCT

*PATRICIA EDWARDS GARRETT*

*v.*

*CHARLES DOUGLAS GARRETT, SR.*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Charles and Patricia Garrett were married in 1971, and lived in the East Tate community. During their twenty-three year marriage they had three sons. On September 27, 1993, Patricia left her husband and moved to Texas. Patricia filed her complaint for divorce upon grounds of habitual cruel and inhuman treatment or irreconcilable differences on March 24, 1994, and Charles filed his complaint for divorce upon grounds of adultery and/or habitual cruel and inhuman treatment or irreconcilable differences on January 24, 1995.

During the marriage both Charles and Patricia worked full time. Charles' income was approximately $28,000.00 to $29,000.00 per year, and Patricia earned between $11,000.00 and $12,000.00 annually. At the time of trial, Charles had been laid off and was only working in his part-time auto repair business in Independence, Mississippi. Patricia quit her job when she left Charles and moved to Texas, and at the time of trial she was unemployed and had made little attempt to secure a new job in the eighteen months since the separation. Patricia stated that she lacked one year of college to finish her degree and planned to finish school before seeking employment.

Testimony differed as to which spouse took care of the housework and child rearing, but it appears that Patricia and Charles shared the household chores and were both involved in raising their three sons. Patricia and Charles both testified that the family bills were paid out of a joint account into which both of them deposited their paychecks. The marital home, valued at $55,000.00, was purchased in both of their names, apparently from that joint account.

At the time of trial all three sons were living in the marital home with Charles. The older two sons were working full time, but were also attending college and making car upkeep payments. According to Charles's testimony and financial declaration, his monthly expenses at the time of trial totaled $1,669.67, and the older sons were only able to contribute occasionally toward the living expenses. He

also testified that the remaining debt on the home mortgage totaled $17,000.00, but Patricia disagreed, stating that five years ago, the remaining amount owed was $17,000.00.

Patricia withdrew her complaint for divorce, so the chancellor granted Charles a divorce upon the uncontested grounds of adultery. The parties stipulated that Charles would receive custody of Charles Jr. and that the marital home had a value of $55,000.00. They also reached an agreement on the distribution of their personal property, including the automobiles. The remaining issues before the court were the division of the equitable interest in the marital home, child support, alimony, and legal fees. The chancellor ordered Patricia to continuing paying Charles 14% of her adjusted gross monthly income, or no less than $105.00 per month in child support. The chancellor determined that the remaining valuation of home equity in the marital home equaled $38,000.00. He adjudicated that Charles was entitled to 75% of that interest, totaling $28,500.00, with Patricia receiving the remaining 25%, or $9,500.00. The court decided that Charles was entitled to $10,000.00 in lump sum alimony, so he vested title in the marital home to Charles, with Patricia owing Charles a total of $500.00 of remaining lump sum alimony after divesting her $9,500.00 interest in the home. The chancellor further ordered Patricia to pay all court costs, with each party being responsible for their own attorneys' fees.

## I.

## THE CHANCELLOR COMMITTED MANIFEST ERROR BY APPLYING INCORRECT LEGAL CRITERIA TO THE EQUITABLE DIVISION OF JOINTLY ACQUIRED MARITAL ASSETS/PROPERTY OF THE PARTIES.

## II.

## THE CHANCELLOR ABUSED HIS DISCRETION AND COMMITTED MANIFEST ERROR IN AWARDING LUMP SUM ALIMONY TO THE APPELLEE.

Equitable division of the marital property and awards of alimony should be considered together by the chancellor. *Brooks v. Brooks,* 652 So.2d 1113, 1120-21 (Miss. 1995) (citing *Ferguson v. Ferguson*, 639 So.2d 921, 929 (Miss. 1994)).

> Division of marital assets is now governed under the law as stated in *Hemsley* and *Ferguson*. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' nonmarital property.

*Johnson v. Johnson*, 650 So.2d 1281, 1287 (Miss. 1994) (citing *Hemsley v. Hemsley*, 639 So.2d 909 (Miss. 1994) and *Ferguson*, 639 So.2d 921). In this case, the only marital property in issue was the home equity on the marital home. The chancellor determined that Charles was entitled to 75% of the net equity, which the chancellor calculated at $38,000.00, with Patricia receiving the remaining 25%.

Equitable distribution is governed by the guidelines set out by this Court in *Ferguson*, 639 So.2d at 928. Those guidelines include: (1) economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and

emotional value of the marital assets, (4) the value of the nonmarital property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution. *Id*.

In this case, the chancellor stated that his distribution of marital property was based upon the factors in *Hemsley* and *Ferguson*. The testimony was undisputed that Charles earned approximately twice as much money during the course of the marriage as Patricia, but that Patricia enjoyed an adequate earning capacity, which was likely to increase with her pending graduation from college. It also appears from the record that the couple both contributed toward home upkeep and child rearing. Since all three of the couple's sons were living with Charles at the time of the divorce, he had a greater need for stability and financial security, including possession of the marital home. Apparently, the chancellor found Charles's testimony credible that the home equity equaled $38,000.00, and he distributed the value accordingly. This Court has previously stated that for purposes of divorce, it is presumed that the contributions of the parties, whether economic or otherwise, are equal. *Hemsley*, 639 So.2d at 915. However, the chancellor in this case correctly found this presumption to be rebutted based upon his findings of fact and conclusions of law.

The chancellor stated that his decision to award Charles $10,000.00 in lump sum alimony was based upon *Carrow v. Carrow*, 642 So.2d 901, 904-905 (Miss. 1994), and *Crowe v. Crowe*, 641 So.2d 1100, 1103 (Miss. 1994). In *Crowe*, this Court stated that the factors to be considered in awarding lump sum alimony are "(1) the existence of substantial contributions to the accumulation of wealth of the payor either by quitting a job to become a housewife or by assisting in the payor's business, (2) the length of the marriage, (3) the lack of separate income or the existence of comparatively meager income for the recipient, and, (4) lack of financial security in the absence of an award." *Crowe*, 641 So.2d at 1103 (citing *Tilley v. Tilley*, 610 So.2d 348 (Miss.1992); *Retzer v. Retzer*, 578 So.2d 580, 592 (Miss.1990); *Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss.1988)).

The Garretts' marriage was twenty-three years long, and Charles successfully argued that his financial security would be unstable without an award of lump sum alimony in light of his maintaining a home for the couple's three sons with only his part-time auto repair work. Patricia is capable of earning enough money to support herself, but has simply failed to seek employment since their separation. Patricia could afford to pay the $10,000.00 lump sum alimony award with her 25% share of the home equity.

This Court has stated that chancellors may consider marital misconduct as a factor in determining whether to award alimony. *Carrow*, 642 So.2d at 904-905 (citing *Ferguson*, 639 So.2d at 927)). In this case, Patricia did not contest the allegation of adultery, so the chancellor was correct in considering Patricia's adultery as a factor weighing in favor of Charles on the issue of alimony.

Considering the division of the Garrett's home equity and the award of alimony together, the chancellor's ruling in this case was not an abuse of discretion.

**AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

DATE OF JUDGMENT:                    02/22/95

TRIAL JUDGE:                         HON. PERCY LEE LYNCHARD JR.

COURT FROM WHICH APPEALED:           TATE COUNTY CHANCERY COURT

ATTORNEY FOR APPELLANT:              GODFREY RONALD TILLMAN

ATTORNEY FOR APPELLEE:               JOHN THOMAS LAMAR, JR.

NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS

DISPOSITION:                         AFFIRMED - 3/20/97

MOTION FOR REHEARING FILED:

MANDATE ISSUED:                      6/5/97