# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00533-SCT

*SHIRLEY TILLMAN*

*v.*

*WALLACE TILLMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/21/97 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GARY L. ROBERTS |
| ATTORNEY FOR APPELLEE: | JACK C. PICKETT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 7/2/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/23/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case comes before this Court on appeal from the Jackson County Chancery Court. Shirley and Wallace Tillman were granted a divorce on the ground of irreconcilable differences. The lower court was left to decide the custody of a minor child, child support, the use, possession and ownership of the marital home, the division of the parties' personal property, division of assets and liabilities, lump sum and periodic alimony, attorney's fees and court costs. Shirley Tillman appeals the portion of the lower court ruling which denied her any interest in Wallace's pension fund.

¶2. Specifically, she raises the following issue:

**WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING A SPOUSE ANY INTEREST IN THE OTHER SPOUSE'S PENSION PLAN ACCRUED SOLELY DURING THE MARRIAGE.**

¶3. Prior decisions by this Court clearly recognize a spouse's pension fund obtained over the course of the marriage as a marital asset. However, because the overall ruling of the lower court left Shirley Tillman with a more than adequate equitable distribution of the marital estate, the lower court did not abuse its discretion by denying her any interest in the pension fund. Therefore, the lower court decision should be affirmed.

## STATEMENT OF THE FACTS

¶4. Wallace and Shirley Tillman were married on June 23, 1968, in Jackson County, Mississippi. The couple had three daughters and only one, Tracy, who was 17, was not emancipated at the time the parties separated. Wallace was 49 when the trial concluded. At the time of the trial, Wallace had been employed for 26 years, beginning in 1970, by International Paper Company. After holding various hourly-wage positions, Wallace was promoted to a salaried position in April of 1993. He later became process manager.

¶5. Wallace's financial declaration indicated a gross monthly income of $4,626.66 and an adjusted monthly income of $3,259.70. The financial declaration also indicated Wallace's monthly expenses were $4,011.14. These expenses included $950 per month to Shirley Tillman as temporary alimony and payment of her medical insurance, along with one-half of all medical expenses not covered by insurance. Also, Wallace was paying insurance in the amount of $162.50 per month on the three vehicles owned by the parties: a 1994 Buick Regal, owned by Shirley, Tracy's 1988 Pontiac Sunbird and Wallace's 1995 GMC Sonoma pickup. Wallace was also paying $200 per month on a $3,100 MasterCard bill. Wallace was paying $75 per month to Singing River Hospital because of $3,000 in medical bills incurred when he suffered a heart attack in February of 1996. He was paying $275 per month to the I.R.S. for underpayment of his 1995 federal income taxes by approximately $2,200. Wallace was paying $254.90 a month for the Sonoma pickup.

¶6. Shirley Tillman testified to being 48 years of age, a high school graduate and was enrolled part-time in community college at the time of trial. Although she was employed part-time doing catering work during the separation, Shirley had not been employed full-time since 1969. Shirley was pregnant at the time Wallace began working at International Paper and did not, by agreement of the parties, seek employment outside of the home.

¶7. Shirley went back to school after the parties separated in order to support herself. She anticipated at least two years of study to get an Associates Degree if she attended on a full-time basis. She has a 4.0 grade point average and estimates her starting salary to be $12,000 per year upon graduation.

¶8. Shirley was living alone in the four-bedroom, waterfront, marital home at the time of the trial. Her financial declaration indicated a monthly income of $1,146, which included Wallace's $950 temporary alimony. Shirley's expenses were reflected on the financial declaration as totaling $1,538 per month.

¶9. In addition to her domestic contributions to the marriage, Shirley inherited, during the marriage, approximately $100,000 and a house and parcel of real property. The house and land, which was located on Choctaw Street in Moss Point and worth $30,000 to $45,000, eventually became the family home. The money was commingled into a joint account and used for marital purposes. The money was also used to make improvements to the home on Choctaw Street, including adding two

bedrooms, a formal living room, landscaping and bulkheading of the waterfront property. Wallace testified that he and Shirley's father did most of the actual work on the house.

¶10. The major marital property held by the parties at the time of the trial consisted of:

An unencumbered joint ownership interest of the marital home in Moss Point valued at $120,000;

1.    Wallace's salaried savings plan (401k) with a total vested balance of $35,634.70;

2.    Wallace's vested interest in his hourly retirement pension which would provide $866 per month in benefits beginning at age 65 or a lump sum payment of $30,919.43 at age 65. (Calculated as of December 13, 1995).

¶11. In the lower court ruling and judgment filed January 23, 1997, the chancellor held:

A.    Wallace would retain paramount custody of Tracy, and the assessment of child support would be deferred.

B.    Shirley was entitled to periodic alimony in the amount of $950 per month until such time as she may remarry.

C.    Shirley was entitled to lump sum alimony in a sum equal to one-half of Wallace's salaried savings plan (401k), a total of approximately $18,000.

D.    Shirley was entitled to the exclusive use and possession of the marital homestead valued at $120,000 and 70% of the equity interest in the home. The court granted the parties the right to partite the property or to buy or sell the interest of the other. Wallace was entitled to a 30% equity interest in the property.

E.    Wallace was required to pay Shirley's health insurance and one-half of all costs not covered by the insurance.

F.    Wallace was required to reinstate Shirley as a beneficiary under his life insurance policy valued at $112,000.

G.    Wallace was responsible for paying the property taxes on the homestead property at a cost of approximately $800 per year.

H.    Shirley was entitled to $4,000 in attorney's fees and all costs of court.

I.    Each party was entitled to the use and ownership of their respective automobiles with each party being responsible for paying any remaining indebtedness thereon. In accordance with the agreement of the parties, Shirley was given the furnishings, except for Tracy's furniture and enough furniture to furnish an apartment for Wallace, and other personal property accumulated during the marriage. Wallace also received his clothes, tools, and certain mementos.

¶12. The chancellor did not award Shirley any interest in Wallace's pension plan. The chancellor stated:

> As to Mrs. Tillman's claim to one-half of the retirement fund accumulated in Mr. Tillman's retirement account, the Court is of the opinion that this sum accumulated as a result of Mr. Tillman's wages only. Mrs. Tillman would have no independent or other claim to the property and her request for half of his retirement account would be DENIED.

¶13. Shirley Tillman made a post trial request for the chancellor to reconsider his ruling denying her any interest in Wallace's pension fund. This request was denied. It is from these lower court rulings that Shirley Tillman has appealed to this Court.

## DISCUSSION OF THE ISSUE

### I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING A SPOUSE ANY INTEREST IN THE OTHER SPOUSE'S PENSION PLAN ACCRUED SOLELY DURING THE MARRIAGE.

¶14. The scope of review by this Court in domestic relations appeals is limited by the substantial evidence/manifest error rule. *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995). "(This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.)" *Id.* (quoting *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)).

¶15. This Court has repeatedly held that a spouse who has made a material contribution toward the acquisition of an asset titled in the name of the other may claim an equitable interest in such jointly accumulated property. *Jones v. Jones*, 532 So. 2d 574, 580-81 (Miss. 1988); *Hemsley v. Hemsley*, 639 So. 2d 909, 913 (Miss. 1994); *Ferguson v. Ferguson*, 639 So. 2d 921, 934 (Miss. 1994). Marital partners are equal contributors to the marriage regardless of the fact that both might not be at work in the marketplace. *Hemsley*, 639 So. 2d at 915. Marital property has been defined as "any and all property acquired or accumulated during the marriage." *Id.* Marital property is subject to equitable distribution by the chancellor, unless it can be shown by proof that such marital property was acquired prior to or outside the marriage. *Id.* at 914.

¶16. In the case sub judice, the chancellor held that Mrs. Tillman was not entitled to one-half of Mr. Tillman's retirement fund. The chancellor stated that the sum accumulated as a result of Mr. Tillman's wages only. As a result, Mrs. Tillman had no claim to the retirement fund. Clearly, this is erroneous. In *Johnson v. Johnson*, this Court held that a spouse's retirement plan funded solely by his employer was subject to equitable division, because the asset was marital property accumulated during the marriage. *Johnson v. Johnson*, 650 So. 2d 1281, 1285-86 (Miss. 1994).

¶17. The Court remains steadfast in its position that the domestic contributions of one spouse are equally as valuable as the contributions made by the spouse in the marketplace toward a retirement fund. *Id.* at 1285-86; *Hemsley*, 639 So. 2d at 915. In *Ferguson*, the Court held the following:

Although contributions of domestic services are not made directly to a retirement fund, they are nonetheless valid material contributions which indirectly contribute to any number of marital assets, thereby making such assets jointly acquired. And, it must be remembered, the goal of the chancellor in a divorce case is to do equity.

When a couple has been married for twenty-four years, yet the only retirement benefits accumulated throughout the marriage are titled in the name of only one spouse, is it equitable to find only one spouse entitled to financial security upon retirement when both have benefitted from the employer-funded plan along the way? When one spouse has contributed directly to the fund, by virtue of his/her labor, while the other has contributed indirectly, by virtue of domestic services and/or earned income which both parties have enjoyed rather than invested, the spouse without retirement funds in his/her own name could instead have been working outside the home and/or investing his/her wages in preparation for his/her own retirement. When separate plans for each spouse are not in existence, it is only equitable to allow both parties to reap the benefits of the one existing retirement plan, to which both parties have materially contributed in some fashion.

*Ferguson*, 639 So. 2d at 934.

¶18. Shirley and Wallace Tillman had been married nearly 28 years. Wallace began working for International Paper after he and Shirley had married. She did not work outside the home during the marriage, but certainly made domestic contributions to the marriage by keeping the house and caring for the children. Shirley Tillman was entitled to equitable distribution of Wallace Tillman's pension fund. The fact that the pension plan was funded by his employer is of no consequence. Because these funds were accumulated during the marriage, they were marital property properly subject to equitable distribution. *Johnson*, 650 So. 2d at 1285; *Hemsley*, 639 So. 2d at 915.

¶19. This Court in the past has reversed and remanded for further hearings in accordance with the guidelines set forth in *Ferguson*, where the wife was not awarded a specific interest in the husband's pension plan. *Magee*, 661 So. 2d at 1124. However, the chancellor's decision regarding the division of marital property should be viewed as a whole in determining whether he abused his discretion. "[I]t must be remembered, the goal of the chancellor in a divorce case is to do equity." *Ferguson*, 639 So. 2d at 934. In *Johnson*, this Court stated that a chancellor "may adjust his awards to do equity, and has considerable latitude in doing so." *Johnson*, 650 So. 2d at 1287. When viewing the overall property division by the chancellor, it is obvious that Shirley Tillman received an equitable distribution of the marital property, even though she did not receive a portion of Wallace's pension plan.

¶20. The record indicates that all monies and property inherited by Shirley were commingled either into joint accounts or as jointly held property. Therefore, these nonmarital assets were converted to marital assets, subject to equitable distribution. *Johnson*, 650 So. 2d at 1286. The chancellor correctly noted this fact at trial.

¶21. The chancellor took into account that the money and property Shirley inherited were commingled and became joint marital property when he made the equitable division of the marital home. The house and property were valued at $120,000. The chancellor awarded Shirley exclusive use and possession of the home and 70% equity interest in the home. Because the property was

unencumbered, the value to Shirley was $84,000. Wallace received a 30% interest, which equates to $36,000. Wallace's 401k plan was valued at $35,634.70 and was divided equally among the parties. Shirley and Wallace each received $17,817.35. Shirley's total property settlement equaled $101,817.35. Wallace's portion of the property settlement was $53,817. It is obvious that Shirley received a good deal more than Wallace.

¶22. Wallace's vested interest in his pension fund would pay him $866 per month beginning when Wallace turned 65 or a lump sum value of $30,919.43 payable at age 65 (calculated as of December 1995). According to the worksheet relating to Wallace's retirement plan, the lump sum value of the plan was vested but not payable until 2012, which is when he would turn 65. If the chancellor had given Shirley a one-half interest in the pension plan, she would have a claim to a $15,459.72 lump sum payment or $433 per month, payable when Wallace reached age 65.

¶23. The chancellor applied an erroneous legal standard when he failed to include the pension fund acquired during the marriage as a marital asset. Still, the chancellor reached an extremely equitable result that actually favored Shirley Tillman. The chancellor recognized at trial that the inheritance of Shirley Tillman had been commingled with other marital assets such that the inheritance was marital property subject to equitable distribution. Yet, he awarded her a considerably larger interest in the marital home, in light of testimony that Wallace had personally made improvements to the home and held the property jointly.

¶24. It is as if the chancellor took into consideration that Shirley had commingled her inheritance (monetary and realty) into the marital estate so that it was subject to equitable distribution, but he ignored the contributions made by Wallace to the marital home by awarding Shirley a 70% interest compared to his 30% interest. Such a distribution more than amply compensated for the chancellor's failure to grant Shirley a portion of Wallace's pension fund. If the case was remanded and the chancellor did award Shirley a portion of Wallace's pension plan, the chancellor might also decrease her awarded interest in the marital home in order to achieve an overall equitable property division.

### *CONCLUSION*

¶25. The chancellor applied an erroneous legal standard in complete contradiction with this Court's prior holdings by ignoring Wallace Tillman's company-funded pension plan as marital property subject to equitable distribution. However, this Court is charged with determining whether the entire property division was equitable, not whether each marital asset was equitably divided. After consideration of the marital estate, the chancellor may adjust his awards to do equity. Prior decisions of this Court hold that the chancellor should be afforded considerable latitude in adjusting his awards in order that equity might be done. The question remains, "Was the property division equitable?" This Court finds that it was and the chancellor did not abuse his discretion. Even though the wrong legal standard was applied, an equitable result was reached. Therefore, the decision of the lower court is affirmed.

¶26. **JUDGMENT IS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., NOT PARTICIPATING.**