## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CT-00915-SCT

*CONCHETTA McNEER SANDERSON*

*v.*

*ROBERT BUCK SANDERSON*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/27/1999 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN WINCIE LEE, JR. |
| | PAUL RICHARD LAMBERT |
| ATTORNEY FOR APPELLEE: | WAYMAN DAL WILLIAMSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED, AND THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS REVERSED AND REMANDED - 08/22/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/2002 |

EN BANC.

PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. Robert Buck Sanderson and Conchetta McNeer Sanderson were granted a divorce on the ground of irreconcilable differences. The chancellor rendered a decision regarding property division, alimony and child support. Mrs. Sanderson was dissatisfied with the division of property and provisions for alimony, and filed an appeal. The case was assigned to the Court of Appeals, which reversed the alimony judgment and remanded that portion of the case to the Chancery Court of the Second Judicial District of Jones County for the determination of a suitable amount of alimony that would more completely address the financial needs of Mrs. Sanderson. After denial of his motion for rehearing, Mr. Sanderson filed a petition for writ of certiorari alleging that the Court of Appeals erred in reversing the alimony award. This Court granted certiorari and now affirms the Court of Appeals' decision.

### FACTS

¶2. The Sandersons were married in 1977. At the time of divorce, the parties had two minor children and were awarded joint custody. Physical custody of their daughter was awarded to Mrs. Sanderson, and custody of their son was awarded to Mr. Sanderson. From the standpoint of economics, the evidence indicated that the parties had led a comfortable, but not extravagant lifestyle, financed in part by Mr. Sanderson's earnings and in part by dividend income from Mr. Sanderson's holdings of Sanderson Farms, Inc. Mr. Sanderson had acquired his holdings in the corporation principally from family gifts, stock dividends and stock splits. The stock was publicly traded and, as of the time of the divorce, had a market value in the range of $4,000,000. Mr. Sanderson was employed by Sanderson Farms at the time of divorce, and there was evidence that, through salary and dividends, Mr. Sanderson could reasonably expect an annual income in excess of $100,000.

¶3. Mrs. Sanderson had ceased working outside the home during the lengthy marriage in order to devote herself to the rearing of the children. She had a college degree that would permit her to obtain employment as a school teacher, an area in which she had worked in the early years of the marriage. The evidence suggested that, if Mrs. Sanderson returned to the teaching force, she could expect to enjoy an annual income of approximately $22,000 from her endeavors.

¶4. The chancellor found, based on the evidence, that Mrs. Sanderson had gross earnings in 1977 of approximately $9,500 from dividends and interest gleaned from investments and an additional $2,500 from substitute teaching. She had inherited in excess of $150,000 in addition to a one-third interest in a farm valued at approximately $30,000. Her financial statement indicated that the inherited funds were in excess of $140,000, although she testified that they totaled approximately $120,000, and later testified, at the conclusion of the trial, that they were a little more than $100,000.

¶5. The parties owned a modest home valued at approximately $54,250, which was subject to an outstanding mortgage having a balance of about $30,000. There was no significant accumulation of other assets. Neither party had any funds in a retirement account or pension fund, except a small retirement account of several thousand dollars held by Mr. Sanderson. Mrs. Sanderson testified that the parties had intended to rely upon Mr. Sanderson's accumulated wealth in the form of his Sanderson Farms holdings to provide for their retirement, and that the size of his holdings rendered the need for formal retirement planning less urgent than in the normal case.

¶6. There was some conflict in the evidence regarding the state of Mrs. Sanderson's health. She offered medical evidence that due to a back ailment, it was not advisable for her to return to full-time school-teaching duties. However, Mr. Sanderson produced videotaped evidence of Mrs. Sanderson participating in a tennis tournament with no apparent difficulty, suggesting that her physical disabilities were not as grave as she contended. The chancellor determined that Mrs. Sanderson was not disabled due to her medical problems and that she could pursue a teaching career in order to provide at least some part of her own post-divorce support.

¶7. The chancellor also determined that Mr. Sanderson's holdings in Sanderson Farms were not marital assets subject to equitable division; therefore, he did not award Mrs. Sanderson any portion of the accumulated shares of this corporation. The chancellor awarded Mrs. Sanderson the marital house on the condition that she assume the balance due on the mortgage (alternatively, she was permitted to require Mr. Sanderson to purchase her interest in the property for $15,000 if she did not want to obtain title to the house on those terms), lump sum alimony in the amount of $200,000, and rehabilitative alimony of $1,500

per month for thirty-six months. There were other matters resolved, including automobile ownership, responsibility for certain outstanding financial obligations and the like, none of which bear significantly on the issue presented in the appeal or on writ of certiorari.

## STANDARD OF REVIEW

¶8. A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. *Consolidated Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999). "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (Miss. 1999) (citations omitted).

## DISCUSSION

¶9. Mr. Sanderson argues that the Court of Appeals misapplied the law in reversing the award of alimony and remanding the case to the chancery court, because the chancellor did not abuse his discretion or commit manifest error. Mr. Sanderson further argues that the Court of Appeals substituted its judgment for that of the chancellor.

¶10. The determinative issue on appeal was whether the disparity in the post-divorce financial posture of the two parties was so great that the award of $200,000 in lump sum alimony and $54,000 in rehabilitative alimony was not an equitable resolution of the financial issues submitted to the chancellor for decision. The Court of Appeals found that the disparity was too great and that, at the alimony stage of the proceedings, the value of non-marital assets becomes a legitimate part of the chancellor's calculations so that each party is adequately provided for. *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). As a result, the Court of Appeals found that the chancellor should have considered the value of Mr. Sanderson's Sanderson Farms, Inc. stock in awarding alimony to Mrs. Sanderson.

¶11. The Court of Appeals reasoned that by virtue of the divorce, Mrs. Sanderson had been denied the anticipated cushion of Mr. Sanderson's extensive holdings in Sanderson Farms as a source of financial security during her retirement years. Also, the Court of Appeals speculated that in the years following the divorce, even if Mrs. Sanderson were to return to work as a teacher, her income would be substantially less than that enjoyed by Mr. Sanderson. Thus, the Court of Appeals found that it would not be equitable, upon the dissolution of a marriage that exceeded twenty years in length, during which she forsook a professional career in favor of working in the home and in the day-to-day matters of child-rearing, to leave Mr. Sanderson with a multi-million dollar stock portfolio, and an annual income anticipated to be routinely in excess of $100,000 while Mrs. Sanderson was left without any meaningful support beyond her own labor once the relatively brief period of rehabilitative alimony was exhausted. We find the Court of Appeals' disposition to be a correct one and write only to elaborate upon the analysis of the equities in cases such as the one at bar.

¶12. At the outset, we must emphasize that our standard of review defers much to the chancellor's final judgment. As a reviewing court, we are not merely to substitute our own judgement for the chancellor's, but must find manifest wrong or clear error when examining the record before us. However, our ultimate goal in divorce is to do equity. *Ferguson v. Ferguson*, 639 So. 2d 921, 934 (Miss. 1994). Equity has not been done in this case, as illustrated by the disparity in the financial positions of the parties to this case after the final disposition by the chancellor, so we affirm the Court of Appeals.

¶13. Specifically, we find that the length of this marriage, the fact that Mrs. Sanderson was a full-time mother and homemaker, the fact that Mr. Sanderson did not have a retirement plan, the great disparity between the non-marital assets, and the great disparity in their capacities to produce future income make the amounts of the lump sum and rehabilitative alimony awards insufficient to do equity in this case. The Sandersons were married for approximately twenty-two years. Mrs. Sanderson spent much of this time working to maintain the family home and rear their children. During this time, she also was a substitute teacher. Mr. Sanderson, on the other hand, has an M.B.A. from Mississippi State University; bright prospects at the family business, Sanderson Farms; and considerable income from his stock holdings in the family business. Although we accept the chancellor's determination that the stock is a non-marital asset, it appears to us that Mr. Sanderson's lack of retirement plan is directly related to his extensive stock ownership. These facts seem complimentary as Mr. Sanderson's retirement takes the form of the return on the stock holdings. Mrs. Sanderson's non-marital assets do not even come close to approaching the stock's present value. Furthermore, even though she has a college degree, we are under no illusions that her salary as a teacher would approximate Mr. Sanderson's earnings given his station and education. We therefore find the rehabilitative alimony award of $54,000.00 and lump sum alimony award of $200,000.00 to be insufficient in light of the parties' prospects for future earnings and retirement.

## CONCLUSION

¶14. For the foregoing reasons, we affirm the judgment of the Court of Appeals, reverse the chancery court's judgment relating to lump sum and rehabilitative alimony, and remand this case for further proceedings consistent with this opinion. Upon remand, the chancellor should take into account Mr. Sanderson's stock holdings when considering the equities of the lump sum and rehabilitative alimony awards.

¶15. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED, AND THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS REVERSED AND REMANDED.**

**McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**