IRVING, P.J.,
for the Court:
¶ 1. The Hinds County Chancery Court granted Penny Wilson a divorce from Gregory Wilson on the ground of habitual cruel and inhuman treatment. The court also awarded physical custody of the couple’s minor child to Gregory and made determinations regarding the distribution of marital property. Feeling aggrieved, Penny appeals and argues that the chancery court erred: (1) in its classification and division of certain marital property, (2) in failing to consider her employment status in its Ferguson[1] analysis, and (3) in failing to divide Gregory’s retirement account between the two parties.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Penny and Gregory were married on April 13, 2000. After their marriage, Gregory moved into Penny’s home, which she had purchased in 1999. Penny and Gregory had one daughter together, Tat-yana. The chancery court awarded Penny and Gregory joint legal custody of Tatyana but awarded Gregory sole physical custody of Tatyana.
¶ 4. At the trial on the equitable distribution of the couple’s marital estate, Penny testified that she had worked for Delphi Packard Electric before and during her marriage to Gregory. She stated that they never held joint checking or savings accounts. Penny testified that during her marriage, she received a $10,000 gift from her mother and $7,500 associated with the death of her father. She deposited these *146 monies into her personal accounts. When Penny learned that Delphi Packard would be closing, she purchased several rental properties as an investment. Gregory made no monetary contributions toward the purchases. Penny also elected to remain with Delphi Packard to assist in its closing. The company gave Penny $35,000 for three years and an additional $50,000 upon the company’s closing. These monies were in addition to Penny’s normal salary during this period. Penny deposited the money into her personal checking and savings accounts. Penny also purchased several certificates of deposit in various amounts during her marriage to Gregory. These certificates matured in January 2010, but Penny had withdrawn all of the money in the account before trial and refused to reveal its location to the chancery court.
¶ 5. Gregory testified that he gave Penny a check every month for his half of the household expenses. He confirmed that the couple never had any joint checking or savings accounts. Gregory stated that he also gave Penny extra money if he worked side jobs and when she went on vacation. He also made various improvements to the marital home and to the rental properties that Penny purchased during the marriage. Gregory admitted that he had written letters to Penny telling her that he did not want an interest in the rental properties. However, Gregory testified that he only wrote the letters because he thought that they would save his marriage.
¶ 6. In its order, the chancery court stated that the Wilsons’ marriage was not “a marriage where the [parties] shared finances except for [the] payment of expenses.” The court also noted that prior to trial, Penny had a credit union account with a balance of $217,278.68. However, the funds had been withdrawn, and Penny declined to reveal where she had placed the funds from that account. Nevertheless, the court granted Gregory twenty-five percent of the account balance. Additionally, because the rental homes were purchased during the marriage and Gregory did electrical work to increase the value of the properties, they were marital assets. Therefore, the chancery court granted Gregory a twenty-five percent interest in the rental properties.
¶ 7. Additional facts, as necessary, will be addressed in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Untimely Appeal

¶ 8. Gregory contends that Penny’s appeal is untimely. The chancery court entered its final judgment in this case on March 25, 2011. Penny filed her notice of appeal on April 26, 2011. Rule 4(a) of the Mississippi Rules of Appellate Procedure requires that a party file a notice of appeal “within [thirty] days after the date of entry of the judgment or order appealed from.” Thus, according to Gregory, Penny’s appeal is untimely because it was filed outside the thirty-day period allowed by Rule 4(a).
¶ 9. However, Gregory has neglected to consider Rule 26(a) of the Mississippi Rules of Appellate Procedure, which states that, in computing the time prescribed by the rules, “[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, as defined by statute ... in which event the period runs until the end of the next day .... ” (emphasis added). Further, Mississippi Code Annotated section 3-3-7(l) (Supp.2012) provides that the last Monday of April, designated as Confederate Memorial Day, is a legal holiday. In 2011, Confederate Memorial Day fell on April 25, *147 2011. Therefore, as the last day of Penny’s thirty-day period to file her appeal was a legal holiday, the time period did not expire until the end of the day on April 26, 2011. As such, Penny’s appeal is timely, and Gregory’s argument that it should be dismissed as untimely is without merit.

II. Penny’s Issues on Appeal

¶ 10. Domestic-relations matters are reviewed under the substantial-evidence/manifest-error rule. Wheat v. Wheat, 37 So.3d 632, 637 (¶ 11) (Miss.2010). Thus, a chancery court’s findings will not be disturbed on appeal unless they are manifestly wrong or clearly erroneous or the chancery court applied an erroneous legal standard. Id.

a. Classification and Division of Property

¶ 11. Before equitably dividing property at issue in a divorce, the chancery court should first classify the parties’ assets as marital or nonmarital. Boutwell v. Boutwell, 829 So.2d 1216, 1221 (¶ 19) (Miss.2002). Generally, property acquired during the course of the marriage is marital property. Id. Additionally, “[p]roperty brought into the marriage by one partner and used by the family becomes a marital asset.” Id. (citing Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994)). Non-marital assets, such as inheritances and gifts, may become marital if “commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary.” Id. at (¶ 20) (citing Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995)).
¶ 12. Here, Penny contends that the chancery court erred in classifying the marital home, her rental properties, and her credit union account as marital property. We find that Penny’s home was properly classified as marital property. Although Penny had purchased the home prior to her marriage to Gregory, both Penny and Gregory worked to maintain and care for the house after their marriage. Furthermore, Penny, Gregory, and Tatyana lived in the house as a family during Penny and Gregory’s marriage. Thus, even though the house was Penny’s separate property initially, it became a marital asset once the family used the home for domestic purposes.
¶ 13. The chancery court also determined that the rental properties, admittedly acquired during the marriage, were marital property. Penny testified that Gregory did not contribute to the purchase of the properties. Gregory, while admitting that he did not give Penny any money to purchase the properties, testified that he performed substantial electrical work on all of the properties. Andy McLeod testified that he performed repairs on the properties, but he had never done any electrical work on the properties. Given this testimony, we cannot say that the chancery court erred in finding that the rental properties were marital property.
¶ 14. Penny also argues that the chancery court erred in classifying her credit union account as marital property. It is well established that “the party arguing to classify an asset as nonmarital property has the burden to demonstrate to the court the asset’s nonmarital character.” Wheat, 37 So.3d at 640 (¶ 26) (citations omitted).
¶ 15. Before the trial on the equitable distribution of property, the account’s balance was $217,278.68. Despite not knowing the location of these funds, the court determined that Gregory was entitled to twenty-five percent of the account’s balance — $54,319.67. Penny has failed to demonstrate that the account contained non-marital funds that were never commingled. The record only contains evidence that at *148 least $86,347.32 of the account balance is from the certificates of deposit. The certificates of deposit were properly classified as marital property because they were purchased during the marriage. Additionally, it is unclear from the record whether the account contained funds from the rental properties, Penny’s salary, or her severance package from Delphi Packard. There is no evidence of any nonmarital funds in the credit union account. Accordingly, we cannot say that the chancery court erred in classifying this account as marital property and granting Gregory an interest in the account.

b. Ferguson Analysis

¶ 16. At the time of the trial on the equitable distribution of property, Penny was unemployed. She contends that the chancery court erred in its Ferguson analysis by not considering her employment status. In its final judgment on the equitable distribution of property, the chancery court conducted a thorough Ferguson analysis. The court noted that neither party would lack financial security and that both parties had the ability and skills to provide for themselves in the future. There is no evidence that Penny is unable to find a job or that her employment opportunities are limited in any respect. Additionally, the court considered Penny’s income from the rental properties, her unemployment benefits, and the sum of money that Penny had hidden prior to trial. As such, we find that the chancery court conducted a proper Ferguson analysis. This issue is without merit.
c. Gregory’s Retirement Account
¶ 17. Penny argues that she is entitled to a percentage of Gregory’s retirement account because she is unemployed and no longer has a separate retirement account. The Mississippi Supreme Court has previously stated that “[w]hen separate plans for each spouse are not in existence, it is only equitable to allow both parties to reap the benefits of the one existing retirement plan, to which both parties have materially contributed in some fashion.” Ferguson, 639 So.2d at 934.
¶ 18. Nevertheless, we find that the chancery court acted within its discretion in denying Penny a portion of Gregory’s retirement funds. The court used Gregory’s retirement funds to offset the amount awarded to Penny from her severance package and the funds remaining unaccounted for from the credit union account. Additionally, Penny’s financial statement reveals that she has a Delphi Savings Plan with a balance of $14,000 and an additional savings account containing an unknown amount. Accordingly, this issue is without merit.
¶ 19. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).